**Alicia WOODRUFF, Appellant–Petitioner,**

**v.**

**Robert KLEIN, Appellee–Respondent.**

**No. 12A02–0109–CV–610.**

Court of Appeals of Indiana.

Feb. 6, 2002.

Phillip R. Smith, Helmerick & Smith, Lafayette, IN, Attorney for Appellant.

Richard D. Martin, Miller & Martin, Frankfort, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Alicia Woodruff appeals the trial court's denial of her petition for grandparent visitation with her grandson, J.K. She contends that the trial court: 1) erroneously omitted critical findings in its order denying her petition; 2) applied an incorrect standard in determining J.K.'s best interests; and 3) should have relied on Indiana Parenting Time Guidelines to send the parties to mediation or should have appointed a guardian ad litem to design appropriate visitation standards. Appellant's brief at 1, 15.

### FACTS

J.K. was born to Robert and Marta Klein on June 26, 1994. Tragically, one month before J.K.'s sixth birthday, Marta died of cancer. Woodruff was Marta's mother and, thus, is J.K.'s maternal grandmother. Before Marta's death, Robert and Woodruff enjoyed a good relationship. During part of 1996, Marta, Robert, and J.K. lived with Woodruff in Frankfort, Indiana. Marta, Robert, and J.K. eventually moved to another location in Frankfort. Before Marta became ill with cancer, Woodruff maintained a "typical grandparent relationship" with J.K. Tr. at 73. For instance, there were times when Marta would bring J.K. over to Woodruff's to spend the day. Tr. at 11. Woodruff would also spend time with J.K. during family get-togethers or would have him spend the night with the other grandchildren at her home. Tr. at 11.

When Marta became ill and her condition deteriorated, Woodruff visited her more often and took care of J.K. Tr. at 11–12. During the first few months following Marta's death, Robert tried to accommodate various relatives who wanted to spend time with J.K. Tr. at 75. Robert worked a substantial amount of overtime during this period to cover medical and funeral expenses. Tr. at 92. However, the month before J.K. was to enter kindergarten, Robert decided that he needed to spend more time with J.K. to strengthen the bond between them and go through mourning together. Tr. at 75.

Around this time, the relationship between Robert and Woodruff became strained. Robert allowed Woodruff visitation but requested that Woodruff spend as many hours at Robert and J.K.'s home visiting J.K. as J.K. spent visiting at her own home. Tr. at 103–04. Robert explained that he wanted to limit the amount of time J.K. spent away from home and he wanted to strengthen the bond between J.K. and himself. Tr. at 104. Robert was also unhappy that Woodruff smoked around J.K. Tr. at 103.

On September 22, 2000, Woodruff filed her petition for grandparent visitation. She requested "as much visitation as possible and at a minimum weekend, weekday, and holiday visitation." Appellant's App. at 9. The trial court held a hearing on the petition after the U.S. Supreme Court handed down its opinion on the constitutionality of the State of Washington's "nonparental" visitation statute. See Troxel v. Granville, 530 U.S. 57, 60, 64, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (describing the State of Washington's statute as a "nonparental visitation statute" because "any person" was entitled to petition for visitation). Before the admission of evidence at the hearing, Robert requested special findings of fact by written motion. Accordingly, the trial court entered special findings of fact in its judgment denying Woodruff's petition.

The trial court found, among other things, that after Marta's death Robert and Woodruff's relationship "soured" and that Woodruff did not wish to visit with J.K. at J.K. and Robert's home. Appellant's App. at 5. The trial court also found that when Robert would try to communicate with Woodruff by telephone, his calls would be intercepted by caller identification and then not returned. Appellant's App. at 6. On one occasion Woodruff's current husband "got on the phone and swore" at Robert using vulgar language. Appellant's App. at 6.

The trial court concluded that Woodruff failed to present any evidence that Robert was an unfit parent and that such a failure was critical to her case because " 'there is a presumption that fit parents act in the best interests of their children.' " Appellant's App. at 6 (quoting Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). The trial court also concluded that there was no evidence that Robert sought to prevent Woodruff from visiting with J.K. entirely but the dispute arose over when and where the visitation would take place. Appellant's App. at 7. Finally, the trial court concluded, "Regardless of the meaningful contact [Woodruff] may have had with [J.K.] in the past, the dysfunctional relationship that exists between [Woodruff] and Robert prevents the type of visitation that [Woodruff] seeks with [J.K.] from being in his best interest." Appellant's App. at 7. Woodruff now appeals the trial court's judgment.

## DISCUSSION AND DECISION

### I. Standard of Review

When the trial court finds the facts specially and states its conclusions thereon pursuant to Ind.Trial Rule 52, the court on appeal shall not set aside the findings or judgment unless clearly erroneous. McGinley–Ellis v. Ellis, 638 N.E.2d 1249, 1252 (Ind.1994). In applying a two-tiered standard of review, we " 'determine whether the evidence supports the findings and the findings support the judgment.' In deference to the trial court's proximity to the issues, 'we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment.' " Oil Supply Co. v. Hires Parts Serv., Inc., 726 N.E.2d 246, 248 (Ind.2000) (citation omitted) (quoting Chidester v. City of Hobart, 631

N.E.2d 908, 910 (Ind.1994)). We do not reweigh the evidence or determine the credibility of witnesses. *Hughes v. City of Gary*, 741 N.E.2d 1168, 1172 (Ind.2001). Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* Woodruff also appeals from a negative judgment; hence, she must show that "the evidence points unerringly to a conclusion different from that reached by the trier of fact." *See Kennedy v. Kennedy*, 688 N.E.2d 1264, 1267 (Ind.Ct.App. 1997), *trans. denied.*

### II. Woodruff's Claims

#### A. Grandparent Visitation Statute and "Best Interests"

We address, first, the proper standard for determining J.K.'s best interests under the Grandparent Visitation Statute. In their respective appellate briefs, both parties discussed the supposed omission of critical findings and then the standard for determining J.K.'s best interests. We believe, however, once the proper standard is established, Woodruff's claim that the trial court omitted critical findings is more easily addressed. Woodruff argues that the trial court erroneously applied the presumption that a fit parent acts in the best interests of his child when considering a petition for grandparent visitation. Appellant's brief at 12.

We turn to the text of our Grandparent Visitation Statute and applicable case law to address Woodruff's claim. Under Indiana's Grandparent Visitation Statute, a grandparent may seek visitation rights if the child's parent is deceased. IND.CODE § 31–17–5–1(a)(1). A court may grant the grandparent visitation rights if the court determines that visitation rights are in the best interests of the child. IND.CODE § 31–17–5–2(a). "In determining the best interests of the child . . . , the court may consider whether a grandparent has had or has attempted to have meaningful contact with the child." I.C. § 31–17–5–2(b).

■ This court has recently ruled on the constitutionality of Indiana's Grandparent Visitation Statute in light of the U.S. Supreme Court's plurality opinion in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).[1] In *Crafton v. Gibson*, this court, applying *Troxel*, held that Indiana's Grandparent Visitation Statute was not unconstitutional on its face. 752 N.E.2d 78, 98 (Ind.Ct.App.2001). *Crafton* also discussed the factors courts must take into consideration when determining a child's best interests under the Grandparent Visitation Statute. First, courts are to "presume that a fit parent's decision is in the best interests of the child." *Crafton*, 752 N.E.2d at 96 (citing *Troxel*, 530 U.S. at 69, 120 S.Ct. 2054). Acting under this presumption, courts must give special weight to a parent's decision to deny or limit visitation. *See id.* at 96–97. Second, a court should give some weight to the fact that a parent has agreed to some visitation. *Id.* at 97. In *Crafton*, we reversed and remanded the case for retrial, instructing the trial court: 1) to give special weight to a fit parent's decision regarding the grandparent's request for visitation; and 2) to give weight to any "voluntary offer" of visitation. *Id.* at 98, 99.

■ Here, the trial court carefully applied the correct standard established in *Troxel*. First, the trial court determined,

---

1. Before *Troxel* was handed down, this court had already determined that Indiana's Grandparent Visitation Statute did not violate a parent's fundamental right to control the up-
bringing of his child. *See Sightes v. Barker*, 684 N.E.2d 224 (Ind.Ct.App.1997) (holding that the statute passed both rational basis review and strict scrutiny), *trans. denied.*

"No evidence was presented herein establishing that Robert was an unfit parent, which is an important aspect 'for there is a presumption that fit parents act in the best interests of their children.'" Appellant's App. at 6 (quoting *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). Second, the trial court found, "There was no evidence that Robert sought to prevent visiting with [J.K.] entirely. The dispute arose over when and where the visitation was to take place." Appellant's App. at 7. Finally, the trial court, applying the statutory standard, determined that Woodruff had had "meaningful contact" with J.K. in the past. Appellant's App. at 7. The trial court concluded, however, that the "dysfunctional relationship" between Woodruff and Robert prevented the type of visitation Woodruff was seeking. Appellant's App. at 7. Because the trial court applied the proper considerations to Woodruff's petition, her argument fails on this issue.

### B. Erroneous Omission of "Critical Findings"

Woodruff, furthermore, contends that the trial court erred in omitting "critical findings" from its special findings and conclusions. Appellant's brief at 11. More specifically, Woodruff contends that the trial court disregarded the fact that she spent a substantial amount of time with J.K. before Marta's death. Woodruff also complains that J.K. is spending significant amounts of time with other relatives at their homes, including Woodruff's ex-husband who is J.K.'s maternal grandfather.

■ While the trial court *"may* consider" past "meaningful contact" between the grandparent and the child to determine the child's best interests, this consideration is not the touchstone for determining the child's best interests. *See* I.C. § 31–17–5–2(b) (emphasis supplied). *Troxel*, as ap-

plied by this court in *Crafton*, makes the point clear. Trial courts begin with a presumption that a fit parent makes decisions in the best interests of his child. Woodruff failed to show that Robert was an unfit parent, so that his decision to limit visitation was not in J.K.'s best interests. The evidence, to the contrary, showed that Robert is a fit parent who is concerned for his son's emotional well-being and stability. Moreover, the evidence demonstrated that Robert offered Woodruff visitation with J.K. on the condition that at least half of the time be spent in Robert and J.K.'s home. The trial court was entitled to give some weight to this fact, in addition to Robert's status as a fit parent, in determining that court-ordered visitation is not in J.K.'s best interests. In effect, Woodruff failed to show that the evidence leads unerringly to a conclusion different from the one the trial court reached.

■ Woodruff's argument that other relatives enjoy significant amounts of time with J.K. in their homes is no basis to maintain trial court error. The trial court found that Robert was a fit parent and that he had offered Woodruff visitation. As noted above, evidence supports these findings. Woodruff's argument, in light of these well-supported findings, amounts to a request for the trial court to carefully structure visitation, not only with her, but with J.K.'s other relatives. Fit parents, not judges, are better able to make those decisions. Limited judicial resources are more appropriately spent on matters other than crafting visitation schedules to ensure perfect equality in the amount of time a child spends with grandparents vis-à-vis other relatives.

### C. Waived Arguments

■ In her appellant's brief, Woodruff also maintains:

Where the facts cannot be agreed upon, then perhaps the rule should be that these Grandparent Visitation disputes first be mediated as is required in visitation disputes between parents as per order of the Supreme Court or that a Guardian Ad Litem always be appointed by the Court for purposes of aiding the Court in designing appropriate visitation patterns.

Our Indiana Supreme Court has established the Parenting Time Guidelines with an eye to the child's basic needs. More specifically, the purpose of the guidelines was "to ensure more responsible *parenting* and to promote the healthy adjustment and growth of a child...."

Whether there is a legal nexus between the Visitation Guidelines and Grandparent Visitation is a question for [the appellate court].

Appellant's brief at 15 (emphasis supplied). While Woodruff is correct that an appellate court would decide whether the Parenting Time Guidelines are applicable to grandparent visitation disputes, she has presented neither logical argument nor specific citations to authority showing why such disputes would fall under the guidelines. Therefore, her contention is waived. *See* Ind.Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by [logical] reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix...."). For the same reasons, she has waived any argument that a guardian ad litem should be appointed in grandparent visitation disputes to designate "appropriate visitation patterns." Appellant's brief at 15.

Even had Woodruff provided specific citation to the authorities, including to the guidelines themselves, as well as some log-ical argument, we doubt that she would have prevailed. The guideline's title—Indiana *Parenting* Time Guidelines—indicates that they apply to parents, not other family members. More to the point: "The Indiana Parenting Time Guidelines are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each *parent.*" *Indiana Parenting Time Guidelines,* Preamble (emphasis supplied). Given this specificity and the repeated references to "parents" throughout the guidelines, we suggest they have no mandatory application to grandparent visitation disputes.

## CONCLUSION

In conclusion, the trial court applied proper considerations—Robert's fitness as a parent and his offer of visitation—in determining whether court-ordered visitation was in J.K.'s best interests. Woodruff, furthermore, failed to show that the evidence did not support the findings or that the findings did not support the judgment. Moreover, the evidence did not lead unerringly to a conclusion different from the one reached by the trial court. Finally, Woodruff waived her argument that the trial court should have applied Indiana's Parenting Time Guidelines to this grandparent visitation dispute or should have appointed a guardian ad litem.

Affirmed.

NAJAM, J., and MATTINGLY–MAY, J., concur.