Gina HUGHES, Appellant–Respondent,

v.

Timothy ROGUSTA, Appellee–Petitioner.

No. 49A02–0501—JV–79.

Court of Appeals of Indiana.

June 7, 2005.

Publication Ordered June 27, 2005.

J. Michael Grubbs, Barnes & Thornburg LLP, Indianapolis, for Appellant.

Katherine A. Harmon, Baxter James & Rose, LLP, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Gina Hughes (Mother) appeals the trial court's order granting custody of her minor child, M.S.R. (Child), to the child's biological father, Timothy Rogusta (Father). Mother raises two issues:

I. Whether the trial court should have applied the child custody modification standard set out in IC 31–14–13–6 instead of the initial custody determination standard set out in IC 31–14–13–2.

II. Whether some of the trial court's findings and conclusions are supported by the evidence presented at the hearing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father lived together from shortly before Child's birth until she was four years old. Father signed a paternity affidavit at the time of Child's birth. Both parents concede that there was much discord and some violence in the relationship which resulted in Mother moving from the home. In fact, both parents had pled guilty to domestic violence charges within the year before their separation. At the time of their separation in August of 2003, Father filed a petition to establish paternity and requested custody of Child. At the request of both parties, a Domestic Relations Counseling Bureau (DRCB) evaluation and report were ordered. The hearing was held on August 24, 2004. Findings of Fact and Conclusions were entered on December 22, 2004. Additional facts will be supplied where appropriate.

## DISCUSSION AND DECISION

### I. Custody Determination Standard

The first issue presented for our review is whether the trial court should have used the custody modification standard instead of the initial custody determination standard. The difference is important. In an initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. *Apter v. Ross*, 781 N.E.2d 744, 758 (Ind.Ct.App.2003), *trans. denied.* IC 31–14–13–2 provides for an initial custody determination. It provides that:

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interest, there is not a presumption favoring either parent. The court shall

consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

   (A) the child's parents;

   (B) the child's siblings; and

   (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Modification of a child custody order in a paternity action is governed by IC 31–14–13–6, which provides:

The court may not modify a child custody order unless:

(1) modification is in the best interest of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

IC 31–14–13–9 provides:

In a proceeding for a custody modification, the court may not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child . . . .

Mother argues that the trial court should have used the modification standard because Father executed a paternity affidavit when Child was born. IC 16–37–2–2.1(g) provides that "if a paternity affidavit is executed under this section, the child's mother has sole legal custody of the child unless another custody determination is made by a court in a proceeding under IC 31–14."

Mother relies upon *In Re Paternity of Winkler*, 725 N.E.2d 124 (Ind.Ct.App. 2000). In *Winkler*, the child's parents lived together for the first two years of her life and near each other for the next six years until father married and moved to a nearby town. Father did not commence a paternity action until mother planned to move to Virginia four years later. There, this court held that the custody modification standard was appropriate because a finding of a substantial change was required since father had acquiesced in mother's custody for ten years after the parities separated. *Winkler*, however, is distinguishable. Here, there was no acquiescence by Father in Mother's custody. Indeed, as the trial court noted, at the time this proceeding was commenced, Mother has moved from the parties' residence and the child was residing with Father, Father, Mother, and Child lived together as a family until Child was four years old. When Mother left the home, Father immediately filed to establish paternity and determine custody.

■ IC 16–37–2–2.1(g) does not specify a timeframe for a court proceeding to determine custody. Where the language of a statute is clear and plain, we are prohibited from interpreting it. *See Campbell v. State*, 716 N.E.2d 577, 579 (Ind.Ct.App. 1999). Here, there has been no prior court determination concerning custody and Father did not acquiesce in Mother's

custody after the parties physically separated; therefore, the trial court did not err in determining that custody should be decided on the initial custody standard.

## II. Contested Findings and Conclusions

■■■ Mother requested that the trial court enter findings of fact and conclusion thereon. When a trial court makes special findings of fact and states its conclusions thereon pursuant to Ind. Trial Rule 52, this court will not set aside the findings or judgment unless clearly erroneous. *A.G.R. ex rel Conflenti v. Huff*, 815 N.E.2d 120, 124 (Ind.Ct.App.2004), *trans. denied* (2005). In applying a two-tiered standard of review, we determine whether the evidence supports the findings and the findings support the judgment. *Id.*

■■■ In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Woodruff v. Klein*, 762 N.E.2d 223, 226 (Ind.Ct.App. 2002), *trans. denied.* We do not reweigh the evidence or determine the credibility of witnesses. *Id. at* 227. Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* Finally, because the trial court was making an initial custody determination, it was required to consider all evidence from the time of Child's birth in determining the custody arrangement that would be in the best interest of Child.

### A. Stable Environment

■■■ Mother first contends that the trial court erred in concluding that she could not provide a stable environment for Child. The trial court's Conclusion (a) states that "[g]iven her young age, it is in the child's best interest to be in a stable environment which Father can provide." *Appellant's App.* at 9. Mother contends that this was based on two erroneous findings which she restates as: 1) that on two brief periods before the final separation when Mother left the residence to avoid conflict and left Child in the home with Father and maternal grandmother, and 2) that Mother was not currently employed at the time of the hearing but failed to note that Mother and current fiancé were living in a stable home with their newborn son. We do not find Conclusion (a) to say that Mother cannot provide a stable environment but only that Father can, and, therefore, is an appropriate parent to have custody. While Mother specifies only the two separation periods when she left Child at the residence, the trial court also made findings about Mother's moves since the separation: in a hotel or with friends; with her mother in her mother's home; and, at the time of the hearing, with her fiancé and their son in a rented duplex. The trial court also found that Father has remained in the same home but has placed it on the market in hopes of buying a home closer to his sister in Noblesville. Recognizing that continuity and stability in the life of a child is an important component in determining the proper custodial arrangement for a child, we find that the trial court did not err in making this conclusion. *See Paternity of M.J.M.*, 766 N.E.2d 1203, 1210 (Ind.Ct. App.2002).

The trial court also found that Mother was not currently employed and had no income except state assistance for her newborn son and her fiancé's income. Without finding fault with Mother's and her fiancé's decision that she should remain in the home with the baby, we note that the trial court also found that she had been unemployed for about one year, that her work history involved a variety of jobs, and that none of her jobs *lasted very long.*

The evidence presented also shows that most of Mother's jobs were terminated by a firing. Once again, we do not reweigh the evidence or determine the credibility of witnesses. *Woodruff,* 762 N.E.2d at 227.

### B. Other Relationships

■ Mother also objects to the trial courts conclusion that she had exposed Child to relationships with "various" men and contends that the record before us shows that the only relationship that Child has been exposed to is the relationship between Mother and her fiancé. At trial, however, Mother admitted that in addition to her fiancé, she had lived with a man in Avon the second time she left the residence leaving Child with Father and maternal grandmother. *Transcript* at 159. Moreover, the trial court based its custody determination on numerous factors regarding Mother's stability and not on the fact that she exposed the child to various male relationships. Thus, any error regarding this conclusion is harmless.

### C. Health Issues

■ Mother next asserts that the trial court improperly considered her health issues and concluded that her chronic seizure and chronic pain disorders were factors considered in granting custody to Father but made no findings weighing the effect of these disabilities on her parenting skills. Contrary to Mother's contention, however, Conclusion (d) states that "Mothers physical health is an underlying factor for the Court's consideration, but based on the evidence, it appears that her seizure disorder would not interfere with her care of the child."

■ "The mental and physical health of all individual involved" is a relevant factor required to be considered by the statute. IC 31–14–13–2(C)(6). Furthermore, in all cases where a parent has some handicap or disability, the trial court must examine the parent's actual and potential physical capabilities, learn how he or she has adapted to the disability and manages its problems. *Clark v. Madden,* 725 N.E.2d 100, 105 (Ind.Ct.App.2000). Weighing these and all other relevant factors, a trial court must carefully determine whether the parent's condition will in fact have a substantial and adverse effect on the best interest of the child. *Id.*

The trial court concluded that Mother's physical condition would not limit her ability to care for Child. While awarding sole custody to Father, the trial court specified that Mother shall have parenting time pursuant to the Indiana Parenting Time Guidelines plus an additional weekend every other month, and that the parties will follow the parenting time guidelines with reference to the right of first refusal and obligation to confer and consult regarding the child. The trial court properly considered Mother's health issues.

### D. Father's Ability to Parent Child

Finally, Mother contends that trial court erred in concluding that Father will make Child's needs his priority and can provide emotional and residential stability for Child. Mother argues, however, that the record before us shows 1) that Father is not meeting Child's hygiene and grooming needs, 2) that Father has repeatedly told Child that they will never see each other if he is not given custody, and 3) that Father has made his sister de facto custodian of Child during the summer months when Child is not in school and that Father's plans to move closer to sister will continue this arrangement.

While Mother testified that Child is sometimes dirty when she returns, the evidence does not support any pattern of Father's failure to meet Child basic needs. Mother also testified that Father had told Child that they would never see each other if he was not given custody and that Father had told Mother that he would not be around if he was not given custody. To

the extent that this is true, Father is admonished that this is not appropriate, but we find no evidence that the trial court considered this in awarding custody to Father. Finally, Mother contends that Father's sister is the de facto custodian of Child in the summer. That Father has a close relationship with his sister and that Child is welcome in her home, even overnight for the convenience of Child and Father, is not a negative factor. To the extent that it implies that Father is not truly the custodial parent, we defer to the trial court's judgment. *See A.G.R.*, 815 N.E.2d at 124.

The evidence presented to the trial court demonstrated that Child was bonded well to both parents and needed both parents in her life, and that Father, Mother, and Child had ample support from their extended families. Based on the evidence, findings, and conclusions before us, we hold that the trial court did not err in awarding custody to Father and liberal parenting time to Mother.

Affirmed.

BAKER, J., and BARNES, J., concur.