Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 14 2012, 8:51 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**R. LEE MONEY**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**RUSSELL T. CLARKE, JR.**
Emswiller Williams Noland & Clarke, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE VISITATION OF M.L.B. | ) | |
| | ) | |
| K.J.R., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1107-MI-285 |
| | ) | |
| M.A.B., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Kevin M. Barton, Judge
Cause No. 41D01-1007-MI-31

June 14, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

K.J.R. ("Mother") appeals from the trial court's order granting M.A.B.'s ("Grandfather") petition for grandparent visitation rights as to M.L.B. ("the Child"). Mother presents the following restated issues for our review:

I. Whether the trial court's order is clearly erroneous because the trial court failed to address the due process requirements of *Troxel v. Granville*, 530 U.S. 57 (2000) and the factors set forth in *McCune v. Frey*, 783 N.E.2d 752 (Ind. Ct. App. 2003) when entering the visitation order;

II. Whether the trial court's order exceeds the limitations of the Indiana Grandparent Visitation Act ("the Act");

III. Whether the trial court abused its discretion by entering the order that is the subject of this appeal prior to the order pertaining to the adoption petition.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Child was born out of wedlock on October 11, 2004 to Mother and M.D.B. ("Father"). Mother, Father, and the Child lived together in Father's home for the first three months after the Child's birth. When Mother and Father's relationship deteriorated, Mother and the Child moved out of Father's house and into the maternal grandfather's house. Mother began a relationship with P.R., and they married in 2006.

After moving out of Father's house, Mother allowed Father regular and frequent visits with the Child, either every other weekend, or a couple of evenings during the week. The relationship between Mother and Father further deteriorated to the point that Mother obtained a restraining order against Father, which expired sometime in 2006. Mother and Father

2

verbally agreed at that time that Father could exercise parenting time visitation with the Child every other weekend.

Father exercised parenting time with the Child until a dispute arose on Mother's Day 2007, after which Mother requested that Father's visits be supervised by Grandfather. Father did not have a permanent place of residence and had made threats of harm against Mother, her unborn child, and himself. When Father refused to agree to supervised visitation, Mother suggested that Father petition the trial court for parenting time. In January 2008, Father petitioned the trial court to establish paternity. On April 28, 2008, the trial court entered a judgment of paternity and support, deferring a decision on the issue of visitation, but also providing that either party could petition the trial court for a decision on that issue. Although Father did not petition the trial court for an order of visitation, Mother allowed the Child to visit with Grandfather, as well as Father's extended family. The Child attended several of Father's family's functions in 2007, 2008, and 2009; however, after the Child's third birthday party in 2007, Father had virtually no interaction with the Child for the next three years.

On April 19, 2010, P.R. filed a petition for adoption of the Child. Father filed a motion to contest the adoption. Grandfather's subsequent motion to intervene in the adoption was granted by the trial court. Grandfather later filed a verified petition to establish grandparent visitation rights and then moved to consolidate the adoption and visitation actions. The trial court denied the motion to consolidate the actions, but heard evidence pertinent to both actions, at the same hearing. The trial court ultimately awarded Grandfather visitation rights as to the Child pursuant to Indiana Code section 31-17-5-1 prior to entering

3

an order granting the adoption petition. Visitation rights under that chapter, if granted prior to a child's adoption, survive the adoption. *See* Ind. Code § 31-17-5-9. The visitation order provided, in part, that Grandfather was entitled to up to ten hours with the Child in which to celebrate Easter, Thanksgiving, and Christmas with Grandfather's extended family and a summer vacation of up to ten days in duration. Mother now appeals. Additional facts will be supplied.

## DISCUSSION AND DECISION

### I. Clearly Erroneous Findings

The Act provides that under certain circumstances, a trial court may award visitation rights to a grandparent where doing so is in the best interest of the child. Ind. Code § 31-17-5-1, -2. In pertinent part under the Act, a grandparent may seek visitation rights if the child was born out of wedlock and paternity has been established. Ind. Code § 31-17-5-1(a)(3), (b). We will reverse a trial court's determination of the best interests of the child only upon a showing of an abuse of discretion. *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999).

In granting grandparent visitation rights to Grandfather, the trial court entered specific findings and conclusions as required by statute. *See* Ind. Code § 31-17-5-6. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id*. "Findings are clearly erroneous

4

only when the record contains no facts to support them either directly or by inference."

*Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If evidence and inferences support the

trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999).

We do not reweigh the evidence or determine the credibility of witnesses. *Woodruff v. Klein*,

762 N.E.2d 223, 227 (Ind. Ct. App. 2002). We consider the evidence most favorable to the

judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* A judgment is

clearly erroneous if it relies on an incorrect legal standard. *Columbus Med. Servs. Org., LLC*

*v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 94 (Ind. Ct. App. 2009). Mother appeals from

an adverse judgment, as she did not bear the burden of proof at trial. *See Romine v. Gagle*,

782 N.E.2d 369, 376 (Ind. Ct. App. 2003) (adverse judgment is one entered against party

defending).

The Act acknowledges that "a child's best interest is often served by developing and

maintaining contact with his or her grandparents." *Swartz*, 720 N.E.2d at 1221. When the

legislature drafted the Act, it had to balance "the rights of parents to raise their children as

they see fit and the rights of grandparents to participate in the lives of their grandchildren."

*Id.* at 1221-22 (citing *Lockhart v. Lockhart*, 603 N.E.2d 864, 866 (Ind. Ct. App. 1992)).

"Grandparents . . . do not have the legal rights or obligations of parents." *Id.* Parents, on the

other hand, "have a constitutionally recognized fundamental right to control the upbringing,

education, and religious training of their children." *Id.* at 1222. "Grandparents do not

possess a constitutional liberty interest in visitation with their grandchildren." *Id.*

5

Trial courts are to presume that a fit parent's decision regarding visitation is in the best interests of the child. *Crafton v. Gibson*, 752 N.E.2d 78, 96 (Ind. Ct. App. 2001) (applying *Troxel v. Granville*, 530 U.S. 57 (2000)). A trial court must give special weight to a parent's decision to deny or limit visitation. *Id*. at 96-97. Further, a trial court should give some weight to the fact that a parent has agreed to some visitation. *Id*. at 97. Grandparents bear the burden of rebutting the presumption that a parent's decision to deny visitation was made in the child's best interests. *Hicks v. Larson*, 884 N.E.2d 869, 874-75 (Ind. Ct. App. 2008).

In *Troxel v. Granville*, the United States Supreme Court considered the State of Washington's nonparent visitation statute. That statute provided that any person may petition the court for visitation rights at any time and the trial court could grant such rights whenever visitation served the best interest of the child. 530 U.S. at 67. In the plurality opinion, the Supreme Court reiterated the principle that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Id*. at 66. In finding the statute overbroad and an unconstitutional infringement of the right of parents to rear their children, the Supreme Court held that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id*. at 68-69.

We note at the outset that during the combined hearing Mother testified that she did not have any objection to Grandfather, his wife, and extended family continuing to see the Child, and did not object to them spending more time with the Child. When the issue was revisited during the hearing, Mother testified that she had not changed her position about the Child having contact with Grandfather and his family. Mother remained resolute, however, in her objection to Father having contact with the Child. Grandfather testified that he would abide by a court order that Father not be present during Grandfather's visitation with the Child if that was part of the order.

When the trial court enters a decree setting forth its findings and conclusions, the trial court should address: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation. *McCune v. Frey*, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003). The trial court may also consider whether a grandparent has had or has attempted to have meaningful contact with the child. Ind. Code § 31-17-5-2(b).

Although Mother asks us to reverse the trial court's order on this basis, we decline to find that the trial court committed clear error in entering the visitation order without addressing the due process requirements of *Troxel*, and the factors set forth in *McCune*. In subsequent cases discussing the *McCune* factors, which were initially factors a trial court "should" address, we have interpreted those factors to be additional substantive requirements

7

with which a trial court must comply when entering its order. *Ramsey v. Ramsey*, 863 N.E.2d 1232, 1238 (Ind. Ct. App. 2007) (trial court must comply with statutory requirements regarding findings and conclusions and with *McCune* factors).

Though the trial court entered its order without explicitly referring to the factors, it is apparent from the substance of those findings that the trial court evaluated them. Moreover, Mother stated that she had no objection to Grandfather and the extended family having contact with the Child. The trial court found that Mother and Father lived together for approximately three months after the Child was born, but then Mother and the Child moved out when Mother and Father's relationship deteriorated. After moving out, Mother continued to allow Father to exercise parenting time with the Child, and allowed Father's extended family to visit with the Child. While there were instances where Mother did not allow visitation every time it was requested, visitation did occur with Grandfather and the extended family. Grandfather and Mother continued to have a healthy relationship notwithstanding the deterioration of Mother's relationship with Father. However, after the petition for adoption was filed, visitation rarely occurred.

Grandfather and the extended family purchased gifts for the Child for his birthday and Christmas regardless of whether they were allowed to exercise visitation with the Child. The Child recognized Grandfather and referred to him as "Grandpa." Grandfather claimed that he had a loving relationship with the Child. Father's sister testified that Mother indicated that there would be no change in the Child's interaction with Grandfather and the extended family

8

if P.R. adopted the Child. Grandfather established a savings account for the Child and contributes $25.00 to the account on a weekly basis.

We conclude that the trial court correctly determined that Mother agreed to continued contact between Grandfather and the Child. Any failure on the part of the trial court to expressly discuss the *McCune* factors in this particular case is one of form and not substance. We agree with the trial court's conclusion that continued contact between Grandfather and the Child was not unreasonable and did not interfere with Mother's fundamental rights. We find no error here.

## II. Overbreadth of Order

Mother also claims that the trial court's order is overly broad in that it grants visitation to extended family members who are not grandparents for purposes of the Act. Mother claims that the order impermissibly grants Father visitation with the Child after the Child has been adopted by P.R.

The trial court's order does make reference to the Child's interaction with numerous members of Grandfather's extended family. However, we conclude that those references were illustrative of the nature of the Child's relationship with Grandfather and the benefit to the Child of having interaction with many members of the family. Nowhere in the order does the trial court grant visitation to anyone other than Grandfather. Mother's reliance on *Kitchen v. Kitchen*, 953 N.E.2d 644 (Ind. Ct. App. 2011) is misplaced (standing to claim parenting time rights). It is uncontroverted that Grandfather is the grandparent of the Child. He sought and was granted visitation rights under the Act. To the extent that extended family

9

members including Father will also have interaction with the Child is an incidental consequence of the trial court's order. We find no error here.

### III. Timing of the Order

Mother argues that the trial court erred when it "manipulated the timing of its orders to circumvent legislative intent." *Appellant's Br*. at 26. Mother argues that the trial court erred by granting the grandparent visitation because Grandfather did not pursue visitation and have his rights established prior to the filing of the adoption petition.

Indiana Code section 31-17-5-1 provides that a child's grandparent may seek visitation rights if the child is born out of wedlock. Visitation rights under that statute survive the establishment of paternity in a proceeding other than an adoption proceeding. Ind. Code § 31-17-5-8. Additionally, visitation rights survive the adoption of the child by a stepparent. Ind. Code § 31-17-5-9. There is no statutory requirement that grandparent visitation rights must be established prior to the filing of an adoption petition, and we decline to create such a requirement by case law. We find no error, reversible or otherwise, in the timing or sequence of the entry of the trial court's orders on visitation and adoption.

Affirmed.

BRADFORD, J., concurs.

BARNES, J., dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE:  THE VISITATION OF M.L.B.,    )
                                      )
K.J.R.,                               )
                                      )
    Appellant-Respondent,         )
                                      )
        vs.                  )       No. 41A01-1107-MI-285
                                      )
M.A.B.,                               )
                                      )
    Appellee-Petitioner.          )

**BARNES, Judge, dissenting in part with separate opinion**

I respectfully dissent.  The trial court ordered visitation between Child and Grandfather for up to ten hours to celebrate Easter, Thanksgiving, and Christmas in accordance with Grandfather's schedule, for up to ten hours to celebrate Child's birthday, for one weekend per month from 6:00 p.m. Friday through 6:00 p.m. Sunday, and for a ten-day family vacation during the summer.  In my opinion, this is a significant amount of time and substantial intrusion into Mother's relationship with Child.

> [T]o ensure compliance with the United States Constitution, a trial court considering a request for grandparent visitation must enter findings addressing: 1) the presumption

11

that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

In re Guardianship of J.E.M., 870 N.E.2d 517, 520 (Ind. Ct. App. 2007) (citing McCune v. Frey, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003) (citing Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054 (2000))).  As the majority acknowledges, the trial court's order does not expressly refer to the McCune factors as we have previously required trial courts to do, and I cannot agree with the majority that it is apparent from the substance of the trial court's findings that it evaluated the McCune factors.

I see nothing in the trial court's order reflecting the presumption that a fit parent acts in his or her child's best interests or the special weight that must be given to a fit parent's decision to deny or limit visitation.  Without this analysis, I believe that an award of grandparent visitation is not constitutionally permissible.  See Troxel, 530 U.S. at 72-73, 120 S. Ct. at 2064 (observing "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made.").

I am well aware that at the hearing Mother initially appeared to be amenable to some visitation between Grandfather and Child.  For example, Mother seemed to agree to allow visitation during the upcoming holidays and to allow Grandfather to see Child "once or twice a month[.]"  Tr. p. 109.  Mother, however, expressly refused to allow Grandfather to take Child on a vacation to Florida, and Mother later clarified that she was not asking the trial

12

court to order visitation.  I do not believe Mother's apparent agreement to some limited visitation permitted the trial court to order grandparent visitation substantially beyond that to which Mother agreed without first analyzing the McCune factors.

Under these circumstances, I cannot agree with the majority that the trial court's failure to expressly discuss the McCune factors is an issue of form and not substance. Therefore, I dissent.