Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 18 2013, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS/:
CROSS-APPELLEES:
**MICHAEL L. CARMIN**
**GREGORY A. BULLMAN**
Andrews Harrell Mann Carmin & Parker, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEES/
CROSS-APPELLANTS:
**CARL A. HAYES**
**SCOTT R. LEISZ**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEROME SCOTT MATTINGLY, | ) |
| Appellant-Defendant/Counter-Claimant and Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JAUN WILLIAM SMITH and JULIE ANN SMITH, | ) |
| Appellees-Plaintiffs, Counter-Defendants, and | ) |
| SHARON O'CONNELL, | ) |
| Appellee-Plaintiff, and | ) No. 55A05-1203-PL-142 |
| DANIEL E. RICHARDS, VERNUSE MINGS and MEREDITH MINGS, GLEN H. MACPHEE and CAROL S. MACPHEE, HOWARD P. OWEN and DEBRA L. OWEN, JOHN KNOX and JILL KNOX, JERRY STOKES and CHRISTINA STOKES, JACQUELINE A. MAY, and PAUL E. DOMBROSKY and SHEILA A. DOMBROSKY, | ) |
| Appellees/Third-Party Defendants. | ) |

APPEAL FROM THE MORGAN CIRCUIT COURT
The Honorable Matthew G. Hanson, Judge
Cause No. 55C01-1009-PL-893

**February 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jerome Scott Mattingly ("Mattingly") appeals from the trial court's order at the conclusion of a bench trial in a land dispute between Mattingly and several of his neighbors in Morgan County. Jaun William Smith ("Jaun") and Julie Ann Smith ("Julie") (collectively "the Smiths") cross-appeal[1] from the trial court's order. Of the issues presented for our review in this appeal and cross-appeal, we consider the following issue: whether the trial court erred by concluding that a plat of survey unambiguously created an express easement, thereby precluding consideration of extrinsic evidence and that the existence of that easement excused Mattingly's actions.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In November 1983, Donald Richards requested a plat of survey ("1983 Plat") of land he owned with his wife, Elizabeth, in Morgan County to be generated depicting six tracts of land totaling roughly 56.68 acres and an access and utility easement for that acreage that was fifty-feet wide. Those tracts of land later became known as Sundown Acres, a small neighborhood in rural Morgan County. Ecohomes, Incorporated ("Ecohomes") acquired land from Donald and Elizabeth Richards as is represented in a warranty deed dated October 11, 1985. That warranty deed, signed by both Donald and Elizabeth Richards, expressly sets out the existence of a 50-foot roadway and utility easement. *Def.'s Ex.* B.

The first five tracts of land were sold in their entirety to different purchasers. The Smiths purchased their property known as Tract 6 in 1985 from Ecohomes. Although the

---

[1] Sharon O'Connell ("O'Connell") was a party of record in the trial court and as such is a party on appeal. Ind. Appellate Rule 17(A). We note that while her name appears on the briefs, there are no allegations of error raised with respect to the trial court's order in her favor.

land was platted as a 7.0-acre parcel, as a means of reducing their overall costs, the Smiths only purchased a 5.263-acre parcel. The Smiths' property was accessed by way of a one-lane gravel drive that terminated in a cul-de-sac at the northern edge of the property. They built their home on the property in 1987 and began living there. The deed conveyed to the Smiths 5.263 acres subject to a 50-foot wide roadway and utility easement, and was signed by the president of Ecohomes.

To the west of the Smiths' property and immediately west of the 50-foot roadway and utility easement, O'Connell and Richard and Jeannine Metz ("the Metzes") own property that is not described or identified as any of the six tracts in the 1983 Plat. O'Connell and the Metzes use the 50-foot roadway and utility easement to gain access to their property. Although the O'Connell deed is not in the record, the Metzes' deed shows that they had the express right to ingress and egress via the 50-foot easement.

Mattingly had owned property in the general area near Sundown Acres since 1986. In 2006, he acquired land to the south of the Smiths' property from Karl J. Walther, the secretary-treasurer of Ecohomes. Mattingly conducted his own research at the Morgan County Recorder's Office and believed that his acquisition included what had been the southern-most 1.737 acres of Tract 6, the original 7.0-acre tract of which the Smiths had purchased roughly 5.25 acres. An attachment to Mattingly's deed stated that his property contained 37.716 acres, exclusive of the exceptions, more or less. Plaintiff's Exhibit 3 shows the Mattingly property as consisting of 20.15 acres and 17.56 acres to the south of Sundown Acres, or 37.71 acres total.

The 1983 Plat states that the 50-foot access and utility easement is for the above

3

56.68 acres, or Tracts 1-6 constituting Sundown Acres. More specifically, the 1983 Plat provides as follows:

> This plat consists of six tracts numbered 1 through 6 inclusively. The tracts and easements are shown in figures, denoting feet and decimal parts thereof.
>
> Access and Utility Easement for the above 56.68 acres.

*Pls.' Ex. 2; Appellants' App.* at 181. The 1983 Plat depicts the access and utility easement as 50 feet in width extending to the southern-most part of Tract 6. The Smiths' warranty deed from Ecohomes described the real estate they purchased and provided in pertinent as follows:

> . . . .containing 5.263 acres more or less and subject to a roadway and utility easement of 50 feet of even width off of the entire West side of the tract. . . Subject to all easements and restrictions of record.

*Def.'s Ex.* C.[2]

Mattingly believed that he had acquired the right to use the 50-foot easement to access his 37.716-acre parcel by virtue of having purchased the remainder of Tract 6. Over the course of four years, Mattingly made several offers to the Smiths and other residents of Sundown Acres to sell to them his interest in the remainder of Tract 6. His offers were refused, however, because the Smiths and the other residents did not believe that Mattingly had an interest in the remainder of Tract 6.

At some point in 2008, Jaun returned home from work to find Mattingly operating a bulldozer near the property line between the Smiths' property and Mattingly's adjacent property. Jaun confronted Mattingly and told him not to enter onto the Smiths' property.

---

[2] A quitclaim deed admitted in evidence as Defendant's Exhibit S corrects the error appearing in the Smiths' warranty deed. The warranty deed lists Julie's name as Julie R. Smith when her name actually is Julie A. Smith.

Jaun stated that if Mattingly did so they would sue him for repairs regarding any damage done to the property. The next day, the Smiths posted a "No Trespassing" sign on the property line.

On August 30, 2010, Mattingly discarded the "No Trespassing" sign and entered the Smiths' property without permission. Although Jaun was away at work, O'Connell and Julie observed Mattingly bring a tractor with a bush-hog attachment and two chainsaws onto the Smiths' property. While on the Smiths' property Mattingly cleared a path approximately 200 feet long and 30 feet wide through a portion of the western-most part of the Smiths' property and connected the path to the cul-de-sac. Ultimately, Jaun was notified of Mattingly's actions, called police officers, and drove home. Mattingly was not on the Smiths' property at the time police officers arrived and Jaun had come home. Mattingly had also entered upon O'Connell's property and had cleared a path approximately 90-feet long and 15-feet wide. In clearing the paths, Mattingly cut and removed trees, saplings, and underbrush from the two properties.

The Smiths filed a complaint for injunctive relief and damages on September 13, 2010 against Mattingly. The Smiths alleged a dispute between the neighbors over the scope of Mattingly's right, if any, to use or alter the 50-foot easement. They further alleged that Mattingly had trespassed upon the Smiths' real estate and had interfered with the Smiths' use and enjoyment of the their property by cutting down and removing trees. In their prayer for injunctive relief, the Smiths argued that Mattingly would suffer no harm from the issuance of the injunction because Mattingly had no legal right to use the access road easement.

Mattingly filed an answer and counterclaim against the Smiths, and filed a third-party complaint against Daniel E. Richards, Vernuse and Meredith Mings, Glen H. and Carol S. MacPhee, Howard P. and Debra L. Owen, John and Jill Knox, Jerry and Christina Stokes, Jacqueline A. May, and Paul E. and Sheila A. Dombrosky. Mattingly acknowledged that there was a dispute regarding the scope and rights of the easement and asked for a declaratory judgment that two connecting easements encumbered real estate owned by the counterclaim defendants and third-party defendants and that those easements were appurtenant to the Mattingly property for ingress, egress, and utility service. Mattingly denied the Smiths' allegations of trespass, conversion and damages.

Third-party defendants Glen and Carol MacPhee and Daniel E. Richards filed disclaimers of interest with the trial court. The trial court dismissed the case as to those third-party defendants. Third-party defendants, Vernuse and Meredith Mings (collectively, the Mingses), filed an answer to the third-party complaint requesting that the trial court find that the easement granted to the Mattingly property be restricted for use to access by one property owner. The Smiths and third-party defendants Howard P. and Debra Owen, John and Jill Knox, Jerry and Christina Stokes, Jacqueline May, and Paul and Sheila Dombrosky filed their reply to the counterclaim and answer to the third-party complaint admitting that a dispute existed regarding Mattingly's use of the 50-foot easement and requesting that the trial court declare that Mattingly not be allowed to use the easement for ingress and egress.

The Smiths filed a first amended complaint adding O'Connell as a plaintiff. O'Connell alleged that Mattingly had trespassed on her real estate and had performed

acts which interfered with her use and enjoyment of her property. O'Connell and the Smiths alleged conversion against Mattingly, claiming that he had exerted unauthorized control over their property by cutting down and removing trees. O'Connell and the Smiths requested injunctive relief and asserted that injunctive relief would not harm Mattingly. Mattingly filed an answer to the first amended complaint denying the allegations.

Counsel for the Mingses filed a motion to withdraw appearance stating that his motion was done at his clients' request. The Mingses contended that they would be satisfied with a resolution of the matter between O'Connell, the Smiths, and Mattingly, without the Mingses' participation.

At the conclusion of a bench trial,[3] and after a site visit conducted at the request and in the presence of counsel for the parties, the trial court entered its order with findings of fact and conclusions thereon.[4] Briefly, the trial court found as follows: 1) the 1983 Plat was clear on its face; 2) Mattingly's ownership of a portion of Tract 6 gave him the right to utilize the easement for that portion of his adjacent property; 3) Mattingly has no right, however, to increase the burden on or extend the easement established in the 1983 Plat beyond use of the easement for that portion of his property which is the remainder of Tract 6; 4) Mattingly trespassed on O'Connell's property and owed her damages, but his actions did not constitute criminal trespass; 5) Mattingly did not owe the

---

[3] In lieu of bifurcating the proceedings, the trial court allowed witnesses to testify during the bench trial about the original intended use of the 50-foot easement in the event that the trial court found that the 1983 Plat was not clear on its face. The trial court expressly stated in its order that the testimony was not considered in reaching the judgment because the 1983 Plat was clear.

[4] We commend the trial court for the thoroughness of its findings of fact and conclusions thereon, which greatly aided appellate review of the issues.

7

Smiths damages because Mattingly stayed within the easement while clearing the land; and the request for attorney fees was denied due to insufficient evidence. *Appellants' App*. at 13-21.

Mattingly filed his motion to correct error on February 3, 2012, and O'Connell and the Smiths filed their motion to correct error on February 6, 2012. A hearing was held on the motions, and the trial court entered its order denying the majority of the allegations of error, but granting the motions as follows: 1) correcting the name of the original owner of the property to reflect "Donald" and not "Daniel" Richards; 2) correcting the name of the grantor of Tract 6 to the Smiths to reflect "Ecohomes" and not "Richards"; and 3) adding language to the order to explicitly reflect the finding that Mattingly did not commit conversion against the property of the Smiths.

Mattingly now appeals, and the Smiths cross-appeal.

**DISCUSSION AND DECISION**

Both Mattingly and the Smiths argue that the trial court erred by finding and concluding that the 1983 Plat created an express easement. When a trial court makes special findings of fact and states its conclusions thereon pursuant to Indiana Trial Rule 52, this court will not set aside the findings or judgment unless clearly erroneous. *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 124 (Ind. Ct. App. 2004). In applying a two-tiered standard of review, we determine whether the evidence supports the findings and the findings support the judgment. *Id.* "In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Hughes v. Rogusta*, 830 N.E.2d 898, 902

(Ind. Ct. App. 2005) (citing *Woodruff v. Klein*, 762 N.E.2d 223, 226 (Ind. Ct. App. 2002)). While conducting our review, we do not reweigh the evidence or reassess the credibility of the witnesses. *Id.* We consider the evidence most favorable to the judgment, along with all reasonable inferences to be drawn in favor of the judgment. *Id.*

Mattingly argues that because of the trial court's erroneous conclusion about the 1983 Plat, the trial court further erred by failing to consider the extrinsic evidence offered by two witnesses about the original intent behind the creation of the 50-foot easement. The admission or exclusion of evidence is a determination left to the discretion of the trial court. *R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*, 752 N.E.2d 112, 126 (Ind. Ct. App. 2001). On review, we will reverse a trial court's decision only for an abuse of that discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* at 126-27. Evidence that is erroneously excluded requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.* at 127.

Indiana Code section 32-21-1-1 provides as follows:

(b) A person may not bring any of the following actions unless, the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

. . . .

(4) An action involving any contract for the sale of land.

9

We have held, applying the prior codification of this statute, that an easement is an interest in land that falls within the purview of the statute. *Dubois Cnty. Mach. Co. v. Blessinger*, 149 Ind. App. 594, 598, 274 N.E.2d 279, 282 (1971) (applying Ind. Code § 32-2-1-1, which was repealed by P.L. 2-2002, SEC. 128, and recodified as I.C. § 32-21-1-1).

Indiana Code section 36-7-3-3, which was added by Acts 1981, P.L. 309, SEC. 22, sets forth the requisites, approval, and recording of plats. In pertinent part, the statute provides that when *a person* lays out a subdivision of lots or lands within the corporate boundaries of a municipality, the person shall record the plat in the office of the recorder prior to selling any lots. I.C. §36-7-3-3(a)(3) (emphasis supplied). The statute further provides that the plat may be recorded only if it is made and acknowledged in the manner prescribed by statute. I.C. § 36-7-3-3(c). The land surveyor shall sign the plat and acknowledge its execution before an officer authorized to take the acknowledgment of deeds, and when the survey and plat are completed, the land surveyor shall file them with the municipal clerk. Ind. Code §36-7-3-7(h). A very similar procedure, especially with respect to the requirement of a recording of a plat made and acknowledged as prescribed by statute, is utilized if *a person* lays out a subdivision of lots or lands outside the corporate boundaries of any municipality. *See* Ind. Code §36-7-3-2 (subdivision of lots outside municipality boundaries) (emphasis supplied).

The trial court had before it the 1983 Plat which was signed by Thomas H. Murphy, a registered land surveyor, and was stamped received for record on December 27, 1983. The 1983 Plat depicts the intended 50-foot easement and the six tracts of land.

The 1983 Plat also explicitly states that the tracts and easements are shown in figures denoting feet and decimal parts, including an "Access and Utility Easement for the above 56.68 acres[,]" which was divided as six tracts of land. *Appellants' App.* at 181. Thus, the trial court's finding and conclusion that the 1983 Plat was "clear on its face as to purpose and use" is supported by the evidence. The 1983 Plat depicts the intent to create an easement for the 56.68 acres, subdivided into six tracts.

The parties are in agreement and both argue that the trial court erred by finding that the 1983 Plat created an express easement. They contend this is so because the property owners' signatures do not appear on the 1983 Plat.[5] They make this argument, however, without citation to authority to support their contention that the owners' signatures were required. They cite to cases holding that easements are interests in land the granting of which is subject to the Statute of Frauds, and that contracts to grant or reserve easements are subject to the requirements of the Statute of Frauds, but they cite to no authority for the proposition that the owners' signatures must appear on the plat itself. The parties do present argument on the issue, and provide citations to the record which do bear out their claims that the owners' signatures are not present on the 1983 Plat. However, they fail to provide us with legal authority for the proposition that the owners' signatures were required. Without citation to legal authority to support that specific claim, the error is waived for appellate review. Ind. App. Rule 46(A)(8)(a).

---

[5] Plaintiffs' Exhibit 2 bears the surveyor's signature. To the left of that signature and above the surveyor's seal, the 1983 Plat contains the handwritten name printed as "Donald Richards." Neither party contends that this constitutes Richards's signature, the trial court did not so find, and we draw no conclusions either way about the appearance of this name on the 1983 Plat.

The trial court determined that consideration of extrinsic evidence about the intended purpose and use of the easement was not necessary. The parties contend that the 1983 Plat does not satisfy the Statute of Frauds, and therefore, extrinsic evidence was necessary for a determination of the issues before it. However, the 1983 Plat was not a contract for the sale of land, but a proposed plan for the subdivision of the land and how the tracts would be accessed and provided with utility service. The trial court correctly determined that extrinsic evidence was not necessary because the intended use and purpose of the easement was clear on the face of the 1983 Plat.

We do agree with the parties, however, that the 1983 Plat did not create an express easement. However, we do not find that error to be reversible error. The error does not affect the trial court's ultimate judgment. Ind. Trial Rule 52(A).

The deed from Donald and Elizabeth Richards to Ecohomes was signed by both of them and conveyed the property at issue to Ecohomes. The deed also refers to the 50-foot easement and others. The corporate warranty deed from Ecohomes to the Smiths describes the conveyance in pertinent part as follows:

> ". . . containing 5.263 acres more or less and subject to a roadway and utility easement of 50 feet of even width off of the entire West side of the tract."

*Def.'s Ex.* C. The deed further states that the conveyance to the Smiths of the acreage was "[s]ubject to all easements and restrictions of record." *Id.* Mattingly's warranty deed states that the conveyance from Karl J. Walther to Mattingly contains "in all exclusive of said exceptions, 37.716 acres, more or less." *Def.'s Ex.* P at 4. The Mattingly deed also states that the conveyance is made "[s]ubject to an easement 50 feet

12

in width on and across the West side of a portion of the real estate which is the subject of this conveyance. . . .[s]ubject to all restrictions, easements and/or rights-of-way of record." *Def.'s Ex.* P. Plaintiffs's Exhibit 3 and 7 show that Mattingly's 37.716-acre acquisition included the remainder of Tract 6. *Pls.' Ex.* 3 & 7.

The 1983 Plat established the intent that the entire 7 acres of Tract 6 was subject to the access and utility easement. Thus, the evidence supports the trial court's finding and conclusion that the conveyance to Mattingly included a 1.737-acre portion of Tract 6 and that he was entitled to access that portion of his land by way of the 50-foot easement. The deeds conveying the tracts at issue were signed by the owners of the property and made reference to the access and utility easement and stated that the conveyances were made subject to all easements of record. Therefore, the deeds satisfied the Statute of Frauds. We find that the trial court's ultimate judgment is correct even if the finding that the 1983 Plat created an express easement was made in error.

The Smiths further contend that even if the 1983 Plat created an express easement, the existence of the easement did not excuse Mattingly's actions. We have found that the 1983 Plat did not create an express easement, but did show the intended use and purpose of the easement. However, turning to the allegation of error about the findings and conclusion that some of Mattingly's actions were excused due to the finding of his right to use the easement, we set forth the trial court's findings as follows with respect to Mattingly's actions:

> 46) Next is the issue of damages that may have occurred when the defendant took it upon himself to begin clearing land while this case was pending.

13

47) First, the actions taken by the defendant were stupid, at best.

48) Defendant testified that he wanted to "push the issue" when he was not getting the answers he liked from the homeowners about his use and access to the easement.

49) Defendant also testified that he was acting on the advice of counsel which this court finds difficult to believe that any attorney would act with such callous disregard for the court processes and procedures that were in place and available before defendant began to disrupt property that was in question.

50) Simply now because defendant was right about his ability to use that land does not excuse his actions.

51) Still, the testimony was clear and the onsite visit showed quite clearly that for the most part defendant stayed upon the easement as described.[6]

52) Smith testified that the defendant removed several trees and should be responsible for the costs of replacing those trees.

53) However, as decided above, the defendant does have the right to utilize the easement for his sixty-six foot parcel of land and therefore has the right to remove trees that are in his way on the easement itself.

54) As such, any claim for damage made by Smith must be denied.

55) O'Connell testified that the defendant removed saplings and underbrush and should be responsible for replacing those items.

56) The onsite visit and the testimony proved that the defendant went approximately ninety (90) feet onto the O'Connell property and cleared a path that was about fifteen (15) feet wide.

57) The defendant testified that he knew the former property owner had used that divergence onto the O'Connell property and therefore he believed he had a right to be on that land for the purposes of opening up his easement.

---

[6] Jaun testified that Mattingly came onto the western edge of his property and cut down trees. When asked to describe the dimensions of the path that Mattingly cleared, Jaun testified that it was probably 30 feet wide and 200 feet in length and that the path did not take up the whole 50-foot easement. *Tr.* at 27.

14

58) This testimony, however, flies in the face of the initial actions taken by the defendant to clear a path that begins by following the easement, verges slightly to the right toward the cul-de-sac and thereby opens the access he needed.

59) Clearly put, the initial cut made by the defendant was proper and along the easement lines. The cut towards the O'Connell property was not.

60) The easement described in the 1983 plat only touches and does not go onto the property of the O'Connell's[sic].

61) There simply was no reason for defendant to go over and clear off anything located on the O'Connell property if his true intent was to simply get the access he believed he had to the easement.

62) It makes no logical sense that defendant would cut down such large trees and make his path veering slightly to the right and hitting the cul-de-sac for his access and then believe he could clear a ninety foot path that leads right to the driveway of the O'Connell land and would provide no direct access to the easement he had already reached.

*Appellants' App*. at 17-18. The trial court concluded that Smith was not entitled to damages because the path cleared by Mattingly on the Smiths' property remained within the easement. The trial court also concluded that Mattingly was not entitled to enter onto O'Connell's property and clear a path. The trial court awarded O'Connell damages for Mattingly's trespass, but concluded that Mattingly's actions did not constitute criminal trespass.

The trial court's findings and conclusions are supported by the evidence and reach what seems to be an equitable resolution to the land dispute. Mattingly may use the 50-foot easement to access the 1.737-acre portion of his property which is adjacent to the Smiths' property. However, Mattingly is not allowed to overburden the easement by extending the use of the easement for the benefit of the rest of the 37.716-acre property or a division of the land into another development or smaller parcels. The homeowners in

Sundown Acres have permitted O'Connell and the Metzes to utilize the 50-foot easement, and allowing Mattingly to also use that easement limited to his use of his 1.737 acres would not overburden it. Mattingly's property is accessible via another easement on his property, and he can further develop his property by use of that easement.

Affirmed.

MATHIAS, J., and CRONE, J., concur.