# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 09 2019, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Linda L. Harris
Kentland, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of C.D. | October 9, 2019 |
| Courtney Barber, | Court of Appeals Case No. 19A-JP-665 |
| *Appellant-Defendant,* | Appeal from the Benton Circuit Court |
| v. | The Honorable Rex W. Kepner, Judge |
| Mitchell Dorsey, | Trial Court Cause No. 04C01-1808-JP-000056 |
| *Appellee-Plaintiff* | |

**Vaidik, Chief Judge.**

# Case Summary

[1] Courtney Barber ("Mother") appeals the trial court's order awarding primary physical custody of C.D. ("Child") to Mitchell Dorsey ("Father"). Finding that the evidence supports the trial court's decision, we affirm.

# Facts and Procedural History

[2] Mother is from Athens, Georgia, and Father is from Fowler, Indiana. Mother and Father (collectively, "Parents") met at a go-kart race in Tennessee in 2014. Soon after, Mother moved from Georgia to Indiana to pursue a relationship with Father. In January 2015, about a year after Mother moved to Indiana, Child was born. Parents were never married, and Father's paternity of Child was established by signing a paternity affidavit at Child's birth.

[3] Mother stayed home with Child for the first year of his life while Father worked at his grandfather's hardware store. After that, Mother began working part-time for BP and Dollar General. At some point, Mother quit working for BP and Dollar General and went to work at IGA, a local grocery store, because it "had a little bit of a better pay." Tr. p. 96. However, the family still struggled, and one time, Mother and Child had to go stay with her parents in Georgia because their house had no electricity. Mother borrowed money from her father to get the electricity turned back on and returned to Indiana two weeks later. When she returned, Mother got a job at a family-medicine practice in Lafayette. Then, in May 2018, Mother sent Father a text message saying that

she was going to move back to Georgia with Child. Father thought Mother was being dramatic until she told him that she and Child were in Kentucky.

[4] In August 2018, while Mother and Child were in Georgia, Father filed a petition to establish legal and physical custody as well as child support. A hearing on Father's petition was held in February 2019. At the beginning of the hearing, Parents informed the trial court that they had agreed to share joint legal custody of Child, that Mother would claim Child on taxes for even years and Father would claim Child on odd years, and that they would meet in Portland, Tennessee, to exchange Child for whatever parenting time the court decided upon. *See* Tr. pp. 6-7. The trial court accepted those agreements and then proceeded to hear evidence regarding physical custody of Child.

[5] Father testified that he has lived in the same house in Fowler, which was previously owned by his parents, his entire life. *See id.* at 18. Father said that he works from 8 a.m. to 5 p.m. at Kirby Risk, an electrical-supply distributor, and has been with the company for two-and-a-half years. *See id.* at 18, 21. Father alleged that in the four years that Mother and Child lived with him, he "took care of [Child] equally as [Mother] did." *Id.* at 25. Father said that Child lived in Indiana for most of his life and has a "very close relationship" with Father's mother, Child's cousin, Father's grandmother, and Child's godparents, who all live nearby. *Id.* at 32. Mother testified that she now works for a Walmart auto center in Georgia from 11 a.m. to 8 p.m. and can provide Child health insurance. Mother explained that Child has adapted to life in Georgia and "is crazy about his Papa and Gigi," her parents. *Id.* at 113. Mother stated

that she and Child share a room and live with her parents and her younger brother but that she is saving money to get her own place. *Id.* Both Parents also called witnesses who testified that each is a good parent. *See id.* at 56, 74. After the hearing, the trial court issued its order granting Father primary physical custody of Child. In reaching this decision, the trial court found:

> 1. [Mother] unilaterally decided to move back to Georgia with Child.

> 2. Both parties spent quality time with [Child] when [Parents] resided together, although [Mother] did exercise "more" time with [Child]. Both parents are good parents and are capable of giving [Child] what he needs.

> \*\*\*\*\*

> 4. The Fowler Indiana housing for [Child] is more appropriate for [Child]. He resided in Fowler for approximately four years prior to [Mother's] relocating to Georgia. [Mother] currently resides with her parents in Georgia, and [Child] shares a bedroom with [Mother].

> \*\*\*\*\*

> 6. [Mother] has changed jobs numerous times[.]

> 7. Concerning general stability, [Father] is in a permanent home and has maintained his current employment for quite some time. It appears far less likely that if [Child] were with [Father] primarily that [Child] would have any significant changes in his housing or parenting time and schedule. [Father's] situation is more stable and is likely to remain unchanged.

8. Significant family members and friends have been more firmly rooted in or near Fowler, Indiana as a result of living in Fowler since birth. [Father] has family members, especially his mother, which has [sic] spent much quality time with [Child]. [Mother] has significant family members involved in [Child's] life, and although wonderfully sounding family members, the "time" that [Child] has already spent with family members is more substantial in or around the Fowler or Lafayette area. . . .

The Court has considered ALL the statutory factors in deciding what is in the best interest of [Child]. There is not a GOOD situation to be had in this circumstance, where [Mother] and [Father] of [Child] do not maintain their relationship AND [Mother] finds her best choice is to move back to Georgia, apparently 600 miles away according to counsel, from where [Child] has spent his previous four years. . . .

Having considered all the evidence, the disputed and undisputed testimony, and all the statutory factors, the Court finds the "better" of these two unfortunate options is for [Father] to become the primary custodial parent.[1]

Appellant's App. Vol. II pp. 35-36.

[6] Mother now appeals.

---

[1] The trial court also found that "[Child] is a young boy, and [Father] will provide [Child] with more habits, attitude, hobbies and mannerisms more appropriate for a boy." Appellant's App. Vol. II p. 35. Mother challenges this finding, but because we find that the trial court's other findings support its decision, we need not address whether this finding is proper.

# Discussion and Decision

[7] Mother contends that the trial court abused its discretion by granting Father primary physical custody of Child. We first note that Father did not file an appellee's brief. When the appellee fails to submit a brief, we will not develop an argument on his behalf but, instead, we may reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *GEICO Ins. Co. v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014).

[8] Child-custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion. *In re B.H.*, 770 N.E.2d 283, 288 (Ind. 2002). Reversal is appropriate only if we find that the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id.* We do not reweigh the evidence or determine the credibility of witnesses. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005). Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.*

[9] Indiana Code Section 31-14-13-2 provides that in a paternity action:

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

We have said that "[c]ontinuity and stability in the life of a child is an important component in determining the proper custodial arrangement for a child." *In re Paternity of M.J.M.*, 766 N.E.2d 1203, 1210 (Ind. Ct. App. 2002).

[10] Here, the trial court found as follows: both Parents are good parents and are capable of giving Child what he needs; significant family members and friends have been more firmly rooted in or near Fowler, as a result of Child living in Fowler since birth; Father's housing in Fowler is more stable for Child; Mother unilaterally decided to move back to Georgia with Child; Mother has changed jobs numerous times; and Father's situation is more stable and is likely to remain unchanged. Appellant's App. Vol. II p. 35. What this case truly boils down to is that the trial court was put in the difficult position of choosing between what it thought were two good parents and selected Father. Mother's complaints about the trial court's findings are essentially requests for us to reweigh the evidence in her favor, which we may not do. We therefore conclude that the trial court did not abuse its discretion in granting Father primary physical custody of Child.

[11] Affirmed.

Riley, J., and Bradford, J., concur.