FILED

May 31 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Darlene R. Seymour
Bryan L. Ciyou
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Janice Mandla Mattingly
Janice Mandla Mattingly, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marva Deskins Hamilton, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Michael Hamilton, <br> *Appellee-Respondent.* | May 31, 2018 <br><br> Court of Appeals Case No. <br> 29A02-1710-DR-2428 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Jonathan M. Brown, Judge <br><br> Trial Court Cause No. <br> 29D02-1610-DR-9293 |

**Pyle, Judge.**

## Statement of the Case

[1] Marva Deskins Hamilton ("Mother") appeals the child custody order entered following the dissolution of her marriage to Michael Hamilton ("Father"). Mother specifically argues that the trial court abused its discretion in awarding

primary physical custody of their daughter, L.H., to Father. Finding no abuse of the trial court's discretion, we affirm the trial court's judgment.

We affirm.

## Issue

Whether the trial court abused its discretion in awarding primary physical custody of L.H. to Father.

## Facts

When Mother and Father began dating in 2011, Mother lived in Maryland with her fourteen-year-old daughter, I.D., and Father lived in Indianapolis. Father visited Mother regularly in Maryland but told her that he would never move because he was actively involved in the life of his three-year-old son, I.H., who lived in Indianapolis. I.H. spent three to four nights per week and every third weekend with Father.

Mother and Father eventually married in June 2013. Mother continued to live in Maryland with I.D., and Father continued his regular visits. In March 2014, Mother gave birth to the parties' daughter, L.H. Father was present for the birth and stayed with Mother, L.H., and I.D. for two weeks after L.H.'s birth. Four months later, Mother, I.D., and L.H. moved to Indianapolis. Mother and Father eventually purchased a home in Hamilton County where I.H. attended school.

Mother, an attorney, obtained employment at a law firm, where she earned an annual base salary of $120,000, with the potential to earn an additional $30,000 in annual performance bonuses for reaching certain employment-related goals. Father is a firefighter/emergency medical technician who works a twenty-four-hour shift every third day. He earns $80,000 per year.

The parties shared household responsibilities during their marriage. Father frequently took L.H. to daycare and picked her up at the end of the day. On Father's days off from the firehouse, he fixed dinner, supervised homework, and got L.H. ready for bed. He was familiar with the pediatrician's recommendations for L.H.'s asthma treatment in the event she had difficulty breathing. L.H. was very close to both her brother, I.H., and her sister, I.D. Father's parents, who lived nearby, were actively involved in all of the children's lives and provided transportation for the children on the days that both parents worked.

In October 2016, Mother filed a petition for legal separation, and in November 2016, Father filed a petition for dissolution. On March 7, 2017, the parties entered into an agreed preliminary order regarding parenting time with three-year-old L.H. and distribution of the parties' property. Later that month, Mother filed a notice of intent to relocate to Maryland and a request for a final custody hearing, wherein Mother advised Father and the trial court that she intended to relocate to Maryland with L.H. by July 1, 2017. Father filed an objection to the relocation and a petition for physical custody of L.H. in April 2017.

[8] The trial court held a three-day hearing on custody, child support, and parenting time in June and July 2017.[1] Testimony at the hearing revealed that in October 2016, Mother learned that her former federal government job in Maryland might be available. Without telling Father, Mother began researching schools in the Maryland area and applied for L.H. to attend the Langley School ("Langley"), a private school, which is located in Virginia and offers foreign languages, art, and music. In early March 2017, Mother received notice that L.H. had been accepted at Langley and had received a considerable financial aid package. Mother visited Maryland later in March 2017 for a job interview, and while she was there, she took L.H. to visit Langley. Thereafter, Mother placed a deposit at Langley to hold L.H.'s spot. Mother never mentioned Langley to Father.

[9] Mother further testified that she had not been happy with her law firm job in Indianapolis and had never met the billable hour requirement. She planned to return to her former job and house in Maryland less than a week after the hearing. She had already sent all of her belongings to Maryland, and they were in a storage facility. Mother explained that because of the flexible alternative work schedules and hours, government holidays and vacation policy, she would have flexibility in her job to spend more time with L.H. She would earn $146,000 per year. According to Mother, she also had church, family, and educational contacts in the Maryland area. Mother further testified that L.H.

---

[1] The parties entered into a final settlement agreement regarding the distribution of their personal property.

had a close bond with both I.H. and I.D., and that I.D. would be attending college in New Jersey in the fall. Mother admitted that, although she had always discussed the choice of schools for I.D. with I.D.'s father, she had not discussed Langley with Father. During cross-examination, Mother admitted that she had not investigated schools or government jobs in the Indianapolis area. She also told the trial court that she planned to move to Maryland "whether [the] court award[ed] custody to [her] or not." (Tr. 160).

[10] Father testified that he would not be able to move to Maryland because of his relationship with I.H. He expressed concern that if Mother relocated to Maryland, she would not communicate with him about L.H. He told the trial court that his parents would help him with L.H. on the days that he had to work and that L.H. would be his primary focus if he was awarded physical custody of her.

[11] At the end of the hearing, the trial court stated as follows:

> I'll tell you one thing that stuck out at me that bothers me, then I'll get to my order. And the thing that bothers me is that in January, I think it was, that [Mother] was looking for a school for her daughter in the D.C. area. Yeah, that occurred before a job interview. Yeah, that occurred before she had a job offer. But I feel like that [Mother] already has both feet out the door, all her stuff is already in D.C., decisions were already made, and at this point it's whether or not I basically rubberstamp [Mother's] decision to move to Washington, D.C. with [L.H.] And the other factor that I found concerning was that when asked specifically about school decisions for [I.D.], [Mother] indicated she always - she specifically said always - talked to [I.D.'s father] about enrolling [I.D.] wherever she was going to put her in

school, whether it be in the District area, or if it was - when she was in kindergarten or when she went to Carmel High School. She always contacted [I.D.'s father] . . . . We have an effort, at this point, where she's not extended that same courtesy to [Father] with regards to a child that is three years old and trying to move the child out of state. I find that problematic . . . . So I just want the parties to know that I care about your situation. I have agonized about this since I first met the two of you . . . like, two weeks ago . . . . But the thing is, is that this is tough. I do - - as I told the lawyers this morning, I don't have a situation where both of you are - - or one of you is a bad person. At no point have I heard anything that leads me to believe that - - anything other than you both love your daughter, you both want what's best for her, you both want each other involved with her life. That puts me in a horrible place. The person who loses the most, no matter what I decide, is [L.H.] . . . I will agonize over this for the next few weeks, while I wait on the findings from everybody. But, you know, I mean, I think that there's some that think that judges don't care about what happens in their cases. I promise you I'm not one of those . . . .

(Tr. Vol. 3 at 68-69).

[12] In October 2017, the trial court issued a detailed thirty-seven-page dissolution order that awarded Father physical custody of L.H., thereby denying Mother's request to relocate the child to Maryland. Mother now appeals.

# Decision

[13] Mother argues that the trial court abused its discretion when it awarded primary physical custody of L.H. to Father. We disagree.

[14] At the outset, we note that Father requested the trial court to enter findings of fact and conclusions thereon pursuant to Trial Rule 52(A). We therefore apply the following two-tiered standard of review: we first determine whether the evidence supports the findings of fact and then determine whether the findings of fact support the judgment. *Troyer v. Troyer*, 987 N.E.2d 1130, 1134 (Ind. Ct. App. 2013), *trans. denied*. We will set aside findings if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference. *Campbell v. Campbell*, 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied*.

[15] We further note that there is a well-established preference in Indiana "'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). In this regard, the Indiana Supreme Court has explained as follows:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). It is not enough on appeal that the evidence might support some other conclusion; rather, the evidence must

positively require the result sought by the appellant. *D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012). Accordingly, we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.*

[16]     In an initial custody determination, both parents are presumed equally entitled to custody, and "[t]he court shall determine custody and enter a custody order in accordance with the best interests of the child." I.C. § 31-17-2-8. There is no presumption favoring either parent.[2] I.C. § 31-17-2-8. *See also Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945 (Ind. Ct. App. 2006). In determining the child's best interests, the trial court must consider all relevant factors, including specifically the following:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and

---

[2] To the extent that Mother argues that she should have been awarded physical custody of LH. because L.H. is a young girl, we note that Father correctly points out that the "Maternal Preference Rule (sometimes known as the Tender Years Doctrine) has been prohibited for decades." (Father's Br. at 21). The purpose of this "statute prohibiting such presumptions is to overcome . . . the maternal preference rule followed in many cases where the mother has been given preference particularly as to custody of children of tender years or female children." *D.H. v. J.H.,* 418 N.E.2d 286, 290 (Ind. Ct. App. 1981).

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-17-2-8. The trial court's decisions on child custody are reviewed only for an abuse of discretion. *Sabo v. Sabo*, 858 N.E.2d 1064, 1068 (Ind. Ct. App. 2006).

[17] Further, INDIANA CODE § 31-17-2.2-2(a) provides that "if a party provides notice of relocation at an initial hearing to determine custody, the court may consider the factors set forth in this chapter in the court's initial custody determination." Those relocation factors are as follows:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting

time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b). In addition, INDIANA CODE § 31-17-2.2-5(c) provides that the relocating parent has the burden to prove that the proposed relocation is made in good faith and for a legitimate reason.

[18] Here, our review of the trial court's order and the evidence reveals that both parents have actively co-parented L.H. and are competent to handle L.H.'s medical issues. L.H.'s family support system has been established in Indiana, and L.H. is very close to her paternal grandparents. Further, although L.H. is close to both of her siblings, she will have more opportunities to maintain her bond with her brother, I.H., than she will with her sister, I.D. because I.D. currently attends college in New Jersey. In addition, it would be nearly impossible to foster the brother-sister bond between L.H. and I.H. if L.H. moved to Maryland. We further note that Mother did not attempt to find alternative employment in the Indianapolis area in order to preserve the

existing family bonds and did not advise Father of her interest in returning to Maryland until she had filed her notice of intent to relocate. She did not involve Father in the school application process or inform him that she was applying for L.H.'s enrollment at Langley. In fact, Father had never heard of Langley until the final hearing. Mother has clearly not extended the same courtesies to Father that she has previously extended to I.D.'s father. In addition, Mother attempted to minimize Father's parental contributions because he is not as detail-oriented as Mother is. However, we agree with the trial court that although each parent has a different parenting style, both styles have a place in the development of a child. We further note that distance is a major factor in the case. It is an eight to ten-hour drive from Indianapolis to Maryland, and with Father's work schedule, the distance would create a substantial hardship on Father exercising parenting time with L.H. Because Mother's new job offers a flexible schedule and increased earing capacity, it would be less of a hardship for Mother to visit L.H. in Indianapolis than for Father to visit her in Maryland. This evidence supports the trial court's award of primary physical custody of L.H. to Father. The trial court did not abuse its discretion.

[19] Affirmed.

Vaidik, C.J., and Barnes, J., concur.