## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2020, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Cynthia A. Marcus
Marcus Law Firm, LLC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Belcher,

*Appellant-Respondent,*

v.

Heleny Pena,

*Appellee-Petitioner.*

July 17, 2020

Court of Appeals Case No.
19A-DC-2959

Appeal from the Marion Superior Court

The Honorable Gary L. Miller, Judge

The Honorable Deborah J. Shook, Magistrate

Trial Court Cause No.
49D03-1901-DC-452

**Bradford, Chief Judge.**

# Case Summary

In January of 2019, Heleny Pena ("Mother") petitioned for the dissolution of her marriage to Joshua Belcher ("Father"). In November of 2019, the trial court granted dissolution of the parties' marriage and ordered that Mother be awarded primary physical custody of their child and that Father pay $3000 towards Mother's attorney's fees. Father contends that the trial court's order awarding Mother primary physical custody and attorney's fees is erroneous. Because we disagree, we affirm.

# Facts and Procedural History

Father and Mother were married on July 1, 2015. Father and Mother have one child J.B. (born March 1, 2016). Father has two other children from previous relationships, S.M. and C.F. On January 4, 2019, Mother petitioned for dissolution of the parties' marriage. On November 7, 2019, the trial court held an evidentiary hearing regarding Mother's petition. Following the hearing, the trial court found, in relevant part, the following:

> 6. [Father] exercised parenting time infrequently prior to the filing of the Verified Petition for Dissolution[.]
>
> 7. The parties resided together after the birth of [J.B.,] and [Mother] provided all care for [J.B.] [Mother] left the marital residence with [J.B.] in April of 2016 and moved in with her parents.
>
> 8. [Mother] and [J.B.] enjoy a close mother-son relationship and she provides a happy, caring, present, nurturing environment.

[Mother] does not believe that [Father] has shown he can provide this for [J.B.]

9. [Father] engaged in a suicide attempt[.]

[ … ]

13. [Mother] seeks to retain physical custody of [J.B.] and believes the parties should continue to follow the parenting time schedule as set out in the parties' mediated Preliminary Agreement. [Father] also requested physical custody of [J.B.] Stability of the child is important. The Court finds that [Mother] has been the primary caretaker for [J.B.]

14. [Mother] and [Father] agreed that the child support arrearage would be retroactive to the date of filing of the Verified Petition for Dissolution of Marriage and that [Father's] year to date income would be used to calculate [Father's] income.

15. The Court finds that [Mother's] income is $760 per week and [Father's] income is $1,715.62 per week. The Court also finds it is appropriate to impute income to [Mother] as she resides rent free in her parents' home. The Court imputes an additional $100.00 per week for a total income for [Mother] of $860.00.

16. The Court finds that [J.B.] has been attending his present daycare since March of 2019. The weekly cost of daycare for [J.B.] is $300 per week. [Mother] testified that she was concerned about the curriculum in [J.B.'s] previous daycare and that [J.B.] is thriving at his present daycare. [Mother] had concerns about who was providing transportation for [J.B.] and [Mother] requested that no third parties shall be utilized for transportation of [J.B.] to and from daycare. [Father] testified that the daycare should be changed as the present daycare is too expensive and he is concerned about the curriculum. [Mother] made the decision to move [J.B.] to his present daycare as at his prior day care he was not showing the appropriate developmental growth for his age. Also, there was a lack of communication between the staff. [ … ] Whenever any emergencies came up, with [J.B.,] [Mother]

was the only one taking off from work to get [J.B. and Father] claims he will have flexibility in his schedule in the future.

17. Prior to September of 2019 when the Income Withholding Order as initiated, since the date of filing of the Verified Petition for Dissolution of Marriage [Father] has paid $100 in child support.

18. [Mother] has been [] supporting [J.B.] since the date of the filing of the Verified Petition for Dissolution of Marriage and that it has caused her financial hardship. [Father] is doing much better financially this year. [Mother] requests an attorney fee award in the amount of $6,600.

19. [Mother] requested to have the tax exemption for [J.B.] in all years. [Father] requested to alternate the exemptions and stated that [Mother] could have the exemptions in 2019.

20. [Father] acknowledged that he earned a great deal of overtime earlier this year due to personnel issues and stated that he will not be incurring overtime and bonuses in the future. During the marriage [Father] has frequently and consistently worked overtime. [Mother] requested that the parties exchange W2's no later than January 31st of each year in order to recalculate a child support worksheet based upon total income for the prior year and do a "true up" of child support and that any underpayment or overpayment would be paid by February 10th of each year.

21. The Court finds that [J.B.] has engaged in soccer and [Mother] requested that the parties divide agreed upon extracurricular activities by percentage of income.

22. The Court finds that [Mother] requested that the parties each list [J.B.] as a beneficiary on employer provided life insurance.

Appellant's App. Vol. II pp. 9–11. Based on its findings, the trial court ordered, *inter alia*, that Mother be awarded primary physical custody of J.B. and that Father pay Mother's attorney's fees in the amount of $3000.

# Discussion and Decision

[3]     Pursuant to Mother's request under Indiana Trial Rule 52(A), the trial court entered findings of fact and conclusions of law. Our standard of review is as follows:

> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011) (quoting *M.S. v. C.S.,* 938 N.E.2d 278, 281–82 (Ind. Ct. App. 2010). "To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment." *Lasater v. Lasater*, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004). We may affirm the trial court on any legal theory supported by the factual findings

even if the trial court used a different legal theory. *T.L.*, 950 N.E.2d at 783. "Before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that our affirmance is consistent with all of the trial court's factual findings and inferences reasonable drawn therefrom." *Id.* at 783–84.

[4] "In conjunction with the Trial Rule 52 standard, there is a longstanding policy that appellate courts should defer to the determination of trial courts in family law matters." *D.G. v. S.G.*, 82 N.E.3d 342, 348 (Ind. Ct. App. 2017), *trans. denied*. The Indiana Supreme Court has emphasized this deference, stating that

> [a]ppellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

# I. Factual Findings

Father contends that factual findings 6–12, 16, and 18 are clearly erroneous.[1] Our review of the record reveals no evidence to support the following findings and partial findings:

- Finding 6: [Mother] offered parenting time with [J.B.] but [Father] would not take the time that was offered, and used his work hours as an excuse.

- Finding 8: [Mother] expressed frustration that [Father] doesn't allow her to speak with [J.B.] and ignores her inquires to [Father] regarding [J.B.] when [J.B.] is in his care. [Mother] also requested that when the parties need to exchange [J.B.] for parenting time, that this be done at a neutral location.

- Finding 9: [Father] has firearm visibility in his home.

- Finding 10: [Mother] is concerned about the minor child's fascination with guns; his aggressive behavior and expressive behavior and knowledge of guns when returning home after being with [Father.] [J.B.] is not aggressive while he is in [Mother's] care.

- Finding 11: [Father] did not call [J.B.] and did not make attempts to see him for major holidays such as birthdays, Father's Day, or Christmas until the Verified Petition for Dissolution of Marriage was filed.

---

[1] Because the trial court's findings do not specifically reference Indiana Code section 31-17-2-8, Father also contends that the trial court's findings are clearly erroneous. While the trial court's findings do not specifically delineate the best-interests factors listed in Indiana Code section 31-17-2-8, our review of the findings firmly convinces us that these factors were considered and used by the trial court in its determination of physical custody of J.B.

- Finding 12: When the parties lived together, and [Father] had parenting time with [C.F.,] his older daughter, he was never around aside from pick up and drop off time. Whenever [Mother] was unable to watch [C.F.,] [Father] dropped her off to his father's house.

- Finding 16: [Mother] made the decision to move [J.B.] to his current daycare without [Father's] assistance as he was never present nor showed interest in knowing about [J.B.'s] day to day routine or development.

- Finding 18: [Mother] has been solely supporting [J.B.] since the date of the filing of the Verified Petition for Dissolution of Marriage[.][2]

Because we conclude that the above-stated findings and partial findings are clearly erroneous, we will not consider them in our evaluation of Father's remaining claims.

[6] Suffice it to say that our review of the record, however, does reveal evidence to support finding 7 and the remaining parts of findings 6–9, 11, 16, and 18. Father's arguments regarding these findings are merely an invitation to reweigh the evidence and judge witness credibility, which we will not do. *T.L.*, 950 N.E.2d at 783.

---

[2] With regard to finding 18, while Mother did provide a vast majority of the support for J.B. prior to petitioning for dissolution of marriage, Father did provided Mother with $100 and J.B. with medical insurance and therefore she did not *solely* support J.B.

# II. Physical Custody

That said, Father contends that the trial court erred by awarding Mother primary physical custody of J.B. Both parents are presumed equally entitled to custody in an initial custody determination, and there is no presumption favoring either. *Hamilton v. Hamilton*, 103 N.E.3d 690, 694 (Ind. Ct. App. 2018), *trans. denied*. The trial court "shall determine custody and enter a custody order in accordance with the best interests of the child." Ind. Code § 31-17-2-8. In determining the best interests of the child, the trial court shall consider all relevant factors, including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to the child's:
>
>> (A) home;
>>
>> (B) school; and
>>
>> (C) community.
>
> (6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

(9) A designation in a power of attorney of:

(A) the child's parent; or

(B) a person found to be a de facto custodian of the child.

*Id*. We review a trial court's custody decisions only for an abuse of discretion. *Hamilton*, 103 N.E.3d at 695.

[8] Here, the record indicates that Mother has been J.B.'s primary caregiver his entire life. Except for approximately the first week of his life, J.B. has lived with Mother at her parents' residence. Mother and J.B. have a close mother–son relationship, and she has provided him with a happy, caring, and nurturing upbringing. Mother enrolled J.B. in a new daycare, which appears to be meeting his developmental needs. Moreover, up until Mother filed for dissolution of marriage, except for $100 and medical insurance, she has been J.B.'s sole provider, providing him with food, clothing, and taking time off from work when he was sick. Further, for nearly the first three years of J.B.'s life, Father exercised parenting time infrequently, if at all. Father has also attempted suicide. Even without considering the trial court's few findings that were unsupported by the record, we cannot say it abused its discretion by awarding Mother primary physical custody of J.B. *See Anselm v. Anselm*, 146 N.E.3d 1042, 1047 (Ind. Ct. App. 2020) (concluding that the trial court did not abuse its

discretion by awarding Mother primary physical custody after it found Mother to be the children's primary caregiver and a need for the children to have a consistent routine).

# III. Attorney's Fees

[9] Father contends that the trial court erroneously ordered him to pay $3000 toward Mother's attorney's fees. "Pursuant to Indiana Code section 31-15-10-1, a trial court may order a party in a dissolution proceeding to pay a reasonable amount of the other party's attorney's fees." *Eads v. Eads*, 114 N.E.3d 868, 879 (Ind. Ct. App. 2018).

> In determining whether to award attorney's fees in a dissolution proceeding, trial courts should consider the parties' resources, their economic condition, their ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. A party's misconduct that directly results in additional litigation expenses may also be considered. Consideration of these factors promotes the legislative purpose behind the award of attorney's fees, which is to ensure that a party who would not otherwise be able to afford an attorney is able to retain representation. When one party is in a superior position to pay fees over the other party, an award is proper.

*Id*. (cleaned up). A trial court has broad discretion in awarding attorney's fees. *Barton v. Barton*, 47 N.E.3d 368, 377 (Ind. Ct. App. 2015). "Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." *Id*.

[10] The trial court found Mother's weekly income to be $860.00 and Father's to be $1715.62, nearly double that of Mother's. We note that Father did not begin paying child support until September of 2019, leaving Mother essentially solely responsible for providing for J.B. up until nearly a month before this matter was resolved. The trial court also found that being J.B.'s sole provider for nearly his entire life has caused Mother financial hardship. Given Father's superior position to pay attorney's fees, we cannot say the trial court abused its discretion in this regard.

[11] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.