

**FILED**

Jan 11 2024, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christina M. Phillips
Law Office of Christina M. Phillips,
P.C.
Delphi, Indiana

ATTORNEY FOR APPELLEE

Timothy P. Broden
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Paternity of V.D.;

Brittney Kozenko (Mother),

*Appellant-Petitioner,*

v.

Isaac Diaz (Father),

*Appellee-Respondent.*

January 11, 2024

Court of Appeals Case No.
23A-JP-688

Appeal from the Carroll Circuit
Court

The Honorable Benjamin A.
Diener, Judge

Trial Court Cause No.
08C01-2204-JP-4

**Opinion by Judge Pyle**

Judges Vaidik and Mathias concur.

**Pyle, Judge.**

## Statement of the Case

Brittney Kozenko ("Mother") appeals the trial court's order that denied her request to relocate to Utah with her then twenty-three (23) month-old daughter V.D. ("Child") and awarded Isaac Diaz ("Father") primary physical custody of Child. Mother argues that: (1) there was insufficient evidence to support the trial court's determination that relocation was not in Child's best interests; and (2) the trial court clearly erred when it awarded Father primary physical custody of Child. Concluding that there is sufficient evidence to support the trial court's determination that relocation was not in Child's best interests, we affirm that portion of the trial court's order. However, concluding that the trial court clearly erred when it awarded Father primary physical custody of Child, we reverse that portion of the trial court's order and remand with instructions for the trial court to enter an order that reflects its reconsideration and clarification of the custody issue and includes a determination regarding what physical custody award is in Child's best interests.

We affirm in part, reverse in part, and remand with instructions.

## Issues

1. Whether there is sufficient evidence to support the trial court's determination that relocation was not in Child's best interests.

2. Whether the trial court clearly erred when it awarded Father primary physical custody of Child.

## Facts

[3] Mother, originally from northern California, graduated from Kansas State University in 2018. She moved to Carroll County, Indiana, for an employment opportunity with Indiana Packers Corporation as a food safety supervisor. That summer, Mother met and entered into a relationship with Father.

[4] Mother became pregnant by Father in 2020. After Child was born in April 2021,[1] Mother left her employment and stayed home with Child. Father worked outside the home. Mother and Father (collectively, "Parents") cohabitated and co-parented Child until March 2022, when Parents' relationship soured. After the relationship had ended, Mother filed for and obtained a protective order against Father.

[5] In April 2022, Mother filed a verified petition to establish paternity, custody, child support, and visitation. In May, the trial court appointed a Guardian Ad Litem ("GAL"). In June, Parents entered into and filed with the trial court an agreed order that established Father's parenting-time schedule with Child for the month of June.

[6] That same month, Mother accepted a position with Utah-based DFS Gourmet Specialties, Inc. ("DFS") that allowed her to work remotely from her home in Indiana. Mother worked approximately forty (40) hours per week and earned

[1] Father signed a paternity affidavit to establish paternity of Child.

$22.70 per hour. DFS indicated that it would hold an in-house position for Mother at their offices in Salt Lake City, Utah, through the end of 2022. Father worked for Nanshan America, in Lafayette, as a supervisor. He worked a twelve-hour 2-2-3 schedule[2] and earned a salary of $68,000 per year.

[7] On June 29, 2022, Mother filed her notice of intent to relocate, indicating her desire to move with Child to Lehi, Utah. On July 5, 2022, Father filed his objection to Mother's notice of intent to relocate. On July 21, 2022, Parents filed, and the trial court subsequently approved, a second agreed order that established Father's parenting-time schedule with Child for July. In August 2022, Parents filed a third agreed order governing Father's parenting-time schedule with Child for August.

[8] On August 22, 2022, the GAL filed her report with the trial court. The GAL recommended that Mother be allowed to relocate to Utah with Child "to be near her family, her support systems, and the job [at DFS] awaiting her." (App. Vol. 2 at 58). The GAL also recommended that Mother be awarded primary physical custody of Child, as Mother had been Child's "primary caregiver since birth, and due to [Child's] young age[,] it would be traumatic for her to be separated from Mother." (App. Vol. 2 at 58).

---

[2] Under a 2-2-3 work schedule, employees work two or three consecutive shifts with two or three days off over the course of a four-week cycle.

[9] In September 2022, Parents filed a fourth agreed order establishing Father's parenting-time schedule with Child for September and October. In early October 2022, Father changed employers. Subsequently, Father's work schedule changed to weekends – specifically, Friday through Sunday from 5:00 a.m. to 5:00 p.m.

[10] In November 2022, Parents participated in a court-mandated mediation. On November 30, 2022, the mediator filed her report, indicating that Parents had reached an agreement regarding, among other things, Father's parenting-time schedule with Child for December. The following day, the trial court approved Parents' mediation agreement.

[11] On December 5 and 12, 2022, the trial court held a hearing on all matters pending before it. At the December 12 hearing ("Final Hearing"), Mother testified that she wanted to relocate to Utah to be near her family support system which included her mother, step-father, sister, nieces, and other extended family members. Mother further testified that upon relocation to Utah, she and Child would live with Mother's parents, and Mother's mother and sister would provide childcare for Child at no cost. Mother also testified that the relocation would provide Child with the opportunity to be with extended family, including cousins that are her age. Father testified that he did not believe relocation was in Child's best interests.

[12] As the Final Hearing progressed, the trial court periodically interrupted Parents' respective counsel and questioned both Mother and Father as they testified.

During Mother's direct examination, the trial court questioned Mother and then made extensive remarks suggesting that if Mother believed that moving to Utah with Child was truly in Child's best interests, Mother would have moved to Utah with Child and not remained in Indiana. The trial court further suggested that by staying in Indiana and choosing to file a paternity action and seek a protective order against Father in Indiana, Mother might have been acting in her own best interests and not that of Child. The trial court also suggested that Mother might have been attempting to gain the upper hand over Father and control his parenting time with Child.

[13] Specifically, the trial court engaged Mother in the following colloquy:

> THE COURT: I know . . . it's one of those things where -- you realize you and [Father] weren't married, right?
>
> [MOTHER]: Yes.
>
> THE COURT: Because you said that you went to seek counsel about, like, legally ending the relationship or something. I forget your exact testimony, but it made it seem like you were consulting it. You said I had to talk to an attorney about ending the relationship.
>
> [MOTHER]: I think I used the word "separation".
>
> THE COURT: Right. That's not a thing that exists though, you know that, right? Like people break up and they just move on. They're not married. There's not any legal connection between them.

[MOTHER]:  I was just making sure to cover all my bases with [Father] living with me and then helping with the rent.

THE COURT:  It's tough for this neutral observer because[,] on the one hand, I want to give you kudos for following the law to the T and trying to do everything correctly.  On the other, given what we've heard, it seems almost like you want to have the ability to be in control of the situation and all the terms, and that's kind of your overriding goal.

(App. Vol. 2 at 78).

The trial court further remarked:

[A]nd so the reason I'm struggling is, rather than just move to Utah in March, which was your full legal right to do, and then you're getting everything you want.  In your mind, you're doing what's best for the child because you're doing what's best for you.  And then the burden is fully on Father to figure out if he wants to have a relationship with the kid or not, and then he either figures it out or doesn't, right? . . . .  But instead of choosing that outcome, which is what you're asking for now, you're asking for the Court to bless what you could have done before with all the same conditions and terms that you want[.] . . . .  But rather than just move to Utah yourself, we got the protective order . . . ."

(Tr. Vol. 2 at 80).

The trial court also stated to Mother:

[I]t seems like you're trying to stay connected to [Father], like you're trying to get him to live how you want him to live, rather than just doing what's best for the kid because if what's best for

the kid is moving to Utah, why didn't you just move to Utah in March [2022] rather than file the protective order here?

\* \* \* \* \*

So rather than move to Utah with your child because you're afraid of Father and need protection from him, we stay in Indiana, [and] file for [a] protective order.

\* \* \* \* \*

And then you pursue the legal options of doing this legal relationship with Father, which is—needs to happen, should have happened earlier, but didn't, and so I guess my overarching question is was it—if it is in the child's best interest for this to happen, why didn't it just happen?

(Tr. Vol. 2 at 81).

[16] The Court went on to state the following:

It's a complicated thing, and I'm not being fair with my questions, but it's just – I'm not going to change Mother or Father and Mother and Father are going to have to find a way to co-parent. . . .  I'm concerned about the foundation and the decision that the Court is going to have to make based on what appears to be at least not a fully thought-out plan because as a legal—just a legal question it makes no sense to submit yourself to a jurisdiction on the off chance that you're not going to get the relief that you want, when you could have just done what you wanted, if, in fact, [it] is what's best for the kid.

But at the same time, it almost seems like Mother had questions about whether it was best for the kid, wanted to do things right,

wanted to go through the Court so that if the Court says yes, then she can basically tell Father that she's in charge for the end of time. If the Court says no, then I don't know what[.] Mom, I'm guessing, is going to stay in Indiana and raise the kid in a miserable existence, being disrespected by Father's extended family and not having the support, and then trying to move somewhere else in a year or two or three and it doesn't seem like that outcome is good either.

So there's not going to be a good outcome, because the best outcome would have been you doing what was correct in the first place, and that didn't happen. And so now we're trying to make ourselves feel good about some difficult choices that we're wanting to make, moving a child cross-country from the child's parent. And there's no – we can't say it's anything other than that. We've got a parent wanting to move across country away from the other parent, and that's permissible, and it may be in the child's best interest, but, my goodness, that's a tough . . . decision to make.

(Tr. Vol. 2 at 82-84).

[17] On March 21, 2023, the trial court issued a nine-page order that established custody, parenting time, child support, insurance, and tax exemptions ("Final Order"). The trial court determined initially that Mother's proposed move to Utah was in good faith and for a legitimate reason. However, the trial court denied Mother's request to relocate Child to Utah based upon a best interests determination. The trial court awarded Parents joint legal custody of Child and awarded Father primary physical custody of Child.

[18] In its Final Order, the trial court provided the following findings, in relevant part:

8.  Prior to invoking jurisdiction of this Court, Mother was vested with sole legal custody of [Child] pursuant to Ind. Code § 31-14-13-1.

9.  Mother did not determine it was in [Child's] best interests to live in Utah when vested with sole legal custody as evidenced by the fact that Mother and [Child] remain in Indiana.

10.  By initiating a custody case in Indiana, the Court defers to Mother's sound judgment regarding appropriate jurisdiction for [Parents'] child's custody case.

11.  Mother could have moved to Utah and Father would have had to pursue custody/visitation rights through Utah.

(App. Vol. 2 at 141).  In awarding primary physical custody of Child to Father, the trial court found:

77.  As Mother is no longer present in the state where the child resides, Father is vested with primary physical custody of [Child].

(App. Vol. 2 at 146).

[19]  On March 22, 2023, Mother filed a motion to correct error, challenging the trial court's grant of primary physical custody of Child to Father that appeared to be based upon the trial court's finding that Mother was no longer living in Indiana. Father filed a motion to dismiss Mother's motion.  On March 28, 2023, Mother filed her motion to stay the trial court's Final Order.  The following day, Father

filed a motion in opposition to Mother's motion to stay. The trial court did not rule on the pleadings.[3]

[20] Mother now appeals.

# Decision

[21] Mother argues that (1) there was insufficient evidence to support the trial court's determination that relocation was not in Child's best interests; and (2) the trial court clearly erred when it awarded Father primary physical custody of Child. We address each of her contentions in turn.

## Standard of Review

[22] Where, as here, the trial court issued findings of fact and conclusions of law at the request of the parties, we apply a two-tiered standard of review. *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015), *reh'g denied*. First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will set aside findings if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference. *Campbell v. Campbell*, 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied*. "A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those

---

[3] Mother filed her Notice of Appeal on March 30, 2023, and this Court assumed jurisdiction over the matter on that same day, upon the trial court clerk's filing of the Notice of Completion of Clerk's Record. *See* IND. APPELLATE RULE 8 ("The Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary.").

findings." *TMC Transp., Inc. v. Maslanka*, 744 N.E.2d 1052, 1055 (Ind. Ct. App. 2001), *trans. denied*. It is not enough on appeal that the evidence might support some other conclusion; rather, the evidence must positively require the result sought by the appellant. *D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012). Accordingly, we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* In addition, "[i]n reviewing the order being appealed, we will neither reweigh the evidence nor assess witness credibility, instead considering only the evidence that supports the trial court's judgment together with all reasonable inferences to be drawn therefrom." *Paternity of X.A.S. v. S.K.*, 928 N.E.2d 222, 224 (Ind. Ct. App. 2010), *trans. denied.*

[23] We further note that there is a well-established preference in Indiana "'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). In this regard, the Indiana Supreme Court has explained as follows:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

### 1. Relocation

[24] Under certain circumstances, such as those in the present case, a parent intending to move residences must file a notice of that intention. *See* IND. CODE § 31-17-2.2-1. When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. I.C. § 31-17-2.2-5(a). When an objection is made, the relocating parent has the burden to establish that the proposed relocation is made in good faith and for a legitimate reason. *See* I.C. § 31-17-2.2-5(e). If that burden is met, the burden then shifts to the nonrelocating parent to show that the proposed relocation is not in the best interests of the child. *See* I.C. § 31-17-2.2-5(f).

[25] In considering the proposed relocation, the trial court must take into account the following factors:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time[.]
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . arrangements, including consideration of the financial circumstances of the parties.
>
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating

individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(c); *Lynn v. Freeman*, 157 N.E.3d 17, 26 (Ind. Ct. App. 2020). The reference to other factors includes those factors applicable in an initial custody determination as set out in INDIANA CODE § 31-17-2-8. *Lynn*, 157 N.E.3d at 26. Those factors include the child's age and sex; the child's relationship with parents, siblings, and others; and the child's adjustment to home, school, and the community. *Id.*

### *Sufficiency of the Evidence to Support the Trial Court's Findings*

[26] Mother contends that the trial court clearly erred in determining that her requested relocation to Utah was not in Child's best interests. Mother argues that there was insufficient evidence in the record to support the trial court's denial of her request. Specifically, Mother challenges the following findings made by the trial court:

- the $3,121 approximate cost Parents would incur each time they traveled between Indiana and Utah to exercise parenting time with Child;

- the "significant" "hardship and expense" involved in Father exercising parenting time;

- traveling between Indiana and Utah would "likely liquidate the parties' paid-time-off, limiting time off work and/or travel opportunities" for Parents and Child outside of parenting time;

- the "low" feasibility of preserving the relationship between Father and Child through suitable parenting time arrangements;

- the difficulty Parents experienced in working together on parenting time with Child;

- Mother "interprets, incorrectly, the Indiana Parenting Time Guidelines as a maximum rather than a minimum quantum of parenting time afforded to non-custodial parents";

- each month, before Father was allowed parenting time with Child, Mother required Father to negotiate the parenting time and then sign an agreement memorializing the parenting-time schedule for that particular month;

- Mother insisted that the trial court approve each monthly parenting-time schedule;

- Mother denied Father parenting time on days that had been agreed to, "solely because the [written agreements] were not yet submitted to and approved by the [trial court]";

- Mother imposed "restrictions" on Father's ability to exercise parenting time that were "unduly" restrictive and "without rational basis"; and

- allowing Child to relocate to Utah with Mother would "likely have a substantial negative affect" on Father's and Child's relationship.

(App. Vol. 2 at 142-144).

[27] However, our review of the record reveals that the record contains substantial evidence supporting the challenged findings. At the final hearing, the trial court heard testimony from Mother, Father, and Father's brother. The evidence revealed that distance is a major factor in this case, as Lehi, Utah is a five-hour flight from Delphi, Indiana, and a twenty-one-hour drive. Father testified that the trips to Utah would be a problem for him, financially. Regarding the costs of traveling between Indiana and Utah, Mother and Father each submitted evidence, in the form of market research gathered from travel websites, on estimated airfare, lodging, and rental car expenses from which the trial court could determine an approximate cost of the trip. Mother testified that she could shoulder her travel expenses – as well as half of Father's travel expenses to Utah – because she would be able to live with her parents in their home in Utah and, thus, keep her living expenses low.

[28] As for Parents' work schedules, Father testified that he would be working only on weekends, and Mother testified that she could work remotely when she traveled to Indiana. However, Father also testified that his employer provided

limited paid time off, which would make it difficult for Father to be present in Utah for Child's "extracurricular[ activities], doctors' appointments, [and] sick days" or to provide emergency caregiving in the event Mother was unable to care for Child. (Tr. Vol. 2 at 115). During cross-examination, Mother agreed that it would be difficult for Father to attend Child's doctors' appointments and extracurricular activities or provide emergency caregiving if Child lived in Utah.

[29] Regarding parenting time, the evidence of record established that Parents had difficulty agreeing to and exercising parenting time with Child. Father testified that Mother required the parenting-time schedule to be memorialized in writing monthly. She required the writing to be signed by Parents and approved by the trial court before she would allow Father to exercise parenting time with Child. She also required any changes to the monthly parenting-time schedule to be outlined in writing, signed by both parents, and approved by the trial court before she would honor the changes to the schedule. When asked on direct examination if Father believed Mother was "gatekeeping" his parenting time with Child, Father answered, "Yes." (Tr. Vol. 2 at 110). Father added: "I would ask for days and [Mother] would basically say that it's not my time[.] At points, I was even denied Fridays with [Child]. I asked why. I never got a response[.] It's just . . . kind of her way or no way." (Tr. Vol. 2 at 111).

[30] Mother testified that the main difficulty she experienced with coming up with a parenting-time schedule was "[g]etting a [parenting-time] agreement that [Parents] both agree[d] with, that's reasonable for times and dates, getting it written down on paper, and signed so we both have accountability." (Tr. Vol. 2

at 26-27).  Mother also testified that she had refused to allow Father to keep Child overnight because "that's not one of the responsibilities [Father] ever had when living with [Mother and Child,]" and that Father "really [wa]sn't familiar with [Child's] nighttime routine at all or getting up in the middle of the nights with [Child]."  (Tr. Vol. 2 at 30).

[31]    When asked on direct examination what Mother believed would be an appropriate visitation and parenting-time schedule for Father, should the trial court allow Mother to relocate to Utah, Mother testified:

> If he were to be making the trips to Utah, I would -- I mean I would like it to be in writing and kind of decided beforehand, not last minute, but I mean I would give him all the availability that he would ask to . . . make that accommodation to come [to Utah].  And then also I think it would be reasonable for myself to travel with [Child], if so requested, back to Indiana so she can spend time with [Father's] family once a month, maybe once every two months, just depending . . . [.]

(Tr. Vol. 2 at 45).  Mother further testified that each visit by the traveling parent would last one week.  Regarding other methods for Father to maintain his relationship with Child, Mother proposed the following:

> FaceTime agreements.  I know there's been a lot of discussion about FaceTime, but [Child]'s right at the cusp of two years old, so I think she'd be adapting pretty quickly. . . .  But yeah, frequent FaceTime constantly.

(Tr. Vol. 2 at 49).

[32] Regarding the effect Child's relocation would have on Father's relationship with Child, Father told the trial court that he believed his relationship with Child would be "diminished." (Tr. Vol. 2 at 117). When asked on direct examination if Father believed that "any controlling behaviors or gatekeeping [on Mother's part] will get better if [Child] relocates to Utah with [Mother,]" Father testified, "I don't think so. . . . I think it will honestly get worse." (Tr. Vol. 2 at 118).

[33] As we have noted above, the standard of review in matters such as this is not de novo. *D.C.*, 977 N.E.2d at 957. "'On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). We "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. Ct. App. 2008).

[34] Here, the record contains substantial evidence supporting the challenged findings regarding the relocation of Child to Utah. Mother's arguments to the contrary amount to an improper request that we reweigh the evidence and assess witness credibility differently than the trial court did. Adhering to our standard of review, we decline. *Id.* at 1257.

*Sufficiency of the Evidence to Support the Trial Court's Best Interests Determination*

[35] We further determine that the evidence of record supports the trial court's determination that relocation was not in Child's best interests. The trial court's order reveals that in reaching its determination, the trial court carefully and properly applied the facts of this case to the relevant statutory factors listed in INDIANA CODE § 31-17-2.2-1(c), and also – contrary to Mother's argument – to the other factors found in INDIANA CODE § 31-17-2-8.

[36] The trial court found: Parents met in Indiana; Child was conceived in Indiana; Parents cohabitated with Child in Indiana; Child's "entire life, brief as it may be, has occurred in Indiana"; neither parent has other children; Parents are "legally entitled to have a relationship [with Child]," and the trial court's "goal is to maximize each parent's opportunity for a relationship with their child"; the "risk [that Father's relationship with Child would be diminished by relocation] is elevated because of [Child's] young age and the need for frequency of contact between parent and child"; and Child's young age "makes frequency of contact with [Parents] in the best interest" of Child.[4] (App. Vol. 2 at 143, 145). The trial court acknowledged the GAL's recommendation that Mother be allowed

---

[4] Mother also argues that in determining whether relocation was in Child's best interests, the trial court should have first considered the factors found in INDIANA CODE § 31-17-2-8 and then considered those found in INDIANA CODE § 31-17-2.2-1(c). However, Mother cites no case law to support her argument.

to relocate to Utah with Child but found that it could not reach the same conclusion.

[37] Based on the foregoing, we find that the trial court's conclusion that relocation was not in Child's best interests is well-supported by the trial court's findings, and we hold that neither the findings nor the judgment regarding relocation are clearly erroneous. Accordingly, the trial court did not clearly err when it concluded that relocation to Utah was not in Child's best interests.[5]

## 2. Custody

[38] Next, Mother argues that the trial court abused its discretion by awarding primary physical custody of Child to Father. Determinations regarding child custody fall within the trial court's sound discretion. *Hamilton v. Hamilton*, 103 N.E.3d 690, 694 (Ind. Ct. App. 2018), *trans. denied*. In an initial custody determination, both parents are presumed equally entitled to custody. *Id.* The trial court "shall determine custody and enter a custody order in accordance with the best interests of the child" by considering all relevant factors, including:

> (1) The age and sex of the child.

---

[5] Mother also takes issue with Father's testimony at the final hearing that it was not in Child's best interests to relocate to Utah because the move would prevent Child from learning about her Father's culture, heritage, and religious beliefs. However, we note that the trial court did not refer to this evidence in its findings.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parents;

> (B) the child's sibling; and

> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-14-13-2.[6]

---

[6] We note that the trial court referenced INDIANA CODE § 31-17-2-8 in its order. However, Chapter 31-17-2 is applicable in dissolution actions. It is chapter 31-14-13 that is applicable in paternity proceedings, and this case arose as a paternity action. Therefore, the trial court was bound to consider the factors in INDIANA CODE § 31-14-13-2 in making its physical custody determination. Regardless, both § 31-17-2-8 and § 31-14-13-2 contain identical provisions. *See In re Paternity of A.R.S.*, 198 N.E.3d 423, 431 n.8 (Ind. Ct. App. 2022).

[39] The trial court's consideration of the best interests of the child is not limited to those factors explicitly listed in the statute. *Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997). Further, when "a trial court is making an initial custody determination, it is required to consider all evidence from the time of [the] child's birth in determining the custody arrangement that would be in the best interest of [the] child." *In re Paternity of M.W.*, 949 N.E.2d 839, 843 (Ind. Ct. App. 2011).

[40] We do not disturb a child custody determination absent an abuse of discretion. *Russell*, 682 N.E.2d at 515. Thus, we will only reverse the trial court's decision "if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *In re Paternity of M.W.*, 949 N.E.2d at 842. In deference to the trial court's proximity to the issues, we do not reweigh the evidence or determine the credibility of witnesses. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005). Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.*

[41] Mother argues that the trial court erred when it awarded primary physical custody of Child to Father. Mother contends that the trial court did not include any findings that indicate it considered the initial custody factors found in INDIANA CODE § 31-14-13-2. According to Mother, the trial court "devotes" most of its Final Order to "examining the relocation factors . . . , but never specifically makes an initial custody determination based on the applicable statutory factors." (Mother's Br. 17). Mother maintains that the trial court

based its physical custody determination "solely on the (incorrect) finding that Mother no longer resides in the State of Indiana." (Mother's Br. 17). We agree with Mother.

[42] In support of its decision to award primary physical custody to Father, the trial court considered Child's young age, Child's connection to the Delphi community, and whether Child had siblings, finding: Child was conceived in Indiana; Parents cohabitated with Child in Indiana; Child's "entire life, brief as it may be, has occurred in Indiana"; and neither parent has other children. (App. Vol. 2 at 145). However, there are no findings by the trial court regarding its custody determination that could feasibly be said to comment upon Parents' wishes, the relationship of Child with Parents and with her extended family, the mental and physical health of all individuals involved, and any evidence of a pattern of domestic abuse or family violence by either parent.

[43] Rather than considering all the required relevant factors, the trial court appears to have considered only some of the factors and then based its custody determination almost entirely on a finding that Mother was no longer living in Indiana – specifically, "[a]s Mother is no longer present in the state where the child resides, Father is vested with primary physical custody of [Child]." (App. Vol. 2 at 146). However, no evidence was presented to show that Mother had personally relocated to Utah. Therefore, this finding is clearly erroneous. *See Campbell*, 993 N.E.2d at 209 (findings are clearly erroneous only when the record contains no facts to support them either directly or by inference).

[44] The trial court should have considered all of the relevant factors listed in INDIANA CODE § 31-14-13-2—plus any other relevant considerations—from the time of Child's birth in making an award of physical custody. *See Baxendale*, 878 N.E.2d at 1254; *In re Paternity of M.W.*, 949 N.E.2d at 843. By relying on only some of the factors and basing its custody determination largely on a finding that was unsupported by the evidence, we find that the trial court abused its discretion.

[45] Accordingly, we reverse the trial court's award of primary physical custody to Father and remand for the trial court to reconsider the issue in light of our decision. Upon remand, we instruct the trial court to enter a physical custody order that reflects consideration of all of the factors concerning Child's best interests and provides proper findings supported by the evidence as well as additional findings that better articulate its physical custody determination.[7]

[46] Furthermore, we do not condone the trial court's manner of inquiry, remarks, and on-the-record musings regarding Mother's decision to remain in Indiana with Child and file her paternity action in, and seek a protective order from, the

---

[7] In her Appellant's Brief, Mother briefly mentions that the trial court exhibited bias toward her which, according to Mother, "precluded [her] from having a fair and impartial trial on the issue of relocation." (Mother's Br. 4). However, that is the entirety of her argument, and her failure to cite any authority for it waives the issue for our review. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("[A] party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*; IND. APPELLATE RULE 46(A)(8) (stating that appellant's brief must contain contentions on issues presented and that each contention must be supported by cogent reasoning and citations to authorities and statutes relied on).

Indiana courts. The trial court's prolonged thinking-out-loud comments along those lines were inappropriate.

## Conclusion

[47] Based on the foregoing, we hold that sufficient evidence was presented to support the trial court's determination that relocation was not in Child's best interests. However, we further hold that the trial court clearly erred when it awarded primary physical custody of Child to Father. Therefore, we reverse the trial court's physical custody determination and remand with instructions that the trial court enter an order that reflects its reconsideration and clarification of that issue and includes a determination regarding what physical custody award is in Child's best interests.

[48] Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, J., and Mathias, J., concur.